The plaintiff appeals from a summary judgment for a defendant[1] in a personal injury action. Dana Joseph Hollis, 16 years of age at the time, severely injured his head, back, and spinal column while trespassing on the property of Norfolk Southern Railway Company, Inc., in St. Clair County. Dana's father, Wayne Hollis, individually and as next friend of Dana, brought this action against Norfolk Southern, alleging negligence in its failure to install a fence and to place "no trespassing" signs around the area where Dana fell. The plaintiff contended that the "cut" or cliff from which Dana fell was an artificial condition, that Dana was a child trespasser, and that Norfolk Southern had an extended duty to protect child trespassers, such as Dana, against attractive nuisances, such as the plaintiff says this cut presented.
The dispositive issue is whether, under the evidence presented in support of and in opposition to the motion for summary judgment, the plaintiff's claims are defeated by the rules regarding a child trespasser's ability to appreciate the risk involved when the child encounters a dangerous condition.
Norfolk Southern supported its motion for summary judgment by relying upon the depositions of Dana Hollis, Wayne Hollis, and Norfolk Southern's track supervisor, Tracy Jacks. Viewing the record in the light most favorable to the plaintiff, we find that the circuit court had before it, when it entered *Page 729 
the summary judgment, evidence suggesting the following facts.
Dana Hollis, at the time of the injury, was 16 years old and was a 9th grader at Pell City High School, in Pell City, Alabama. At 14, Dana had passed the applicable test and had received his license to operate a motorcycle. At 16, Dana had passed the motor vehicle test and had received his driver's license. In addition, Dana's father, Wayne Hollis, trusted his son's judgment and allowed Dana latitude to make many of his own judgments and decisions, within reason. Wayne Hollis stated the following during the course of his deposition:
 "Q. . . . Dana has pretty much been out in the community, and, to some extent, making his own decisions for some time. Is that true, or not true?
 "A. Dana was out in the community but he would always call home and tell me . . . when he was coming home.
". . . .
 "Q. You did expect him [Dana] to use good judgment when he was out?
"A. Certainly."
There is no evidence that contradicts the conclusion that Dana was a typical 16-year-old boy at the time of the accident.
At approximately 2:30 a.m. on Saturday, October 10, 1992, Dana and two friends walked with flashlights, without permission, across the land adjacent to Norfolk Southern's land, to gain access to railroad tracks and a tunnel owned and maintained by Norfolk Southern. The boys' objective was to approach the tunnel so that at least one of Dana's friends could see the tunnel for the first time.
The tunnel, located in the Cook Springs community of St. Clair County, was carved into the side of a mountain in the late 19th century. The construction of the tunnel and the laying of the tracks had necessitated a "cut" across the side of the mountain; the cut resembles a sheer cliff running along and above the tracks. At the location of Dana's fall, the cliff rises above the tracks approximately 50 to 60 feet. Above the edge of the cut is a slope that runs 6 to 15 feet from the edge, up to the boundary of land not owned by Norfolk Southern.
Dana and his two friends trespassed across adjoining private property to reach the top of the cut above the tracks and the tunnel. It is undisputed that Dana and his friends then trespassed onto Norfolk Southern's property. Their intention was to walk along the outer fence line of the adjoining property and then to continue to walk parallel to the edge of the cut until reaching a spot where the cut was only two to three feet above the tracks. Dana was leading the way, and this path led the three boys away from the tunnel. After reaching the end of the fence line, Dana and his two friends continued to walk parallel to the cut, with flashlights in hand, across the property of Norfolk Southern. According to Dana's deposition testimony, after walking past the end of the fence, he slipped on wet leaves and slid approximately 6 to 10 feet on his back and side to the edge of the cut and then over the edge, landing on the tracks below. The fall was approximately 50 to 60 feet. As a result of the fall, Dana received severe back and head injuries that have rendered him a paraplegic.
In addition, the evidence tended to show the following: First, Dana had visited this area twice before during daylight hours. On both of those occasions, he was trespassing, and on both occasions he observed the cut from the tracks; he testified that he understood that a fall from the top of the cut would cause serious injury. Second, he realized that there was a fairly steep slope between the top of the cut and the fence that ran parallel to the cut and the tracks, and that the fence was only several feet from the edge of the cut:
 "Q. But you had seen this cliff and mouth of the tunnel beforehand, and you knew it was a pretty steep drop right there, didn't you?
 "A. Yeah, about six, seven foot [sic] past there.
"Q. About six or seven feet past what?
". . . .
 "A. It's like six or seven feet between the fence and the edge." *Page 730 
Dana understood, on the basis of common sense, that if he was not careful, he could be seriously injured:
 "Q. I'm a little confused with why you kept going straight when you got to the corner of the fence?
 "A. Because, if you went straight down, you'd have fell [sic] right there. I mean . . . it would be stupid to walk down here at the end of the post, take a right and fall off a cliff, you know."
More importantly, as Dana stated in his deposition, on the morning of the accident, he knew of two safer routes that he could have taken to reach the tunnel. Unfortunately, he chose the riskier path in the dark of early morning. He also testified that he was holding on to the fence to avoid slipping and falling off the edge of the cut. He understood that the edge of the cut was a short distance down the steep slope and that a fall could result in severe injury.
A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank,540 So.2d 732, 734 (Ala. 1989). In determining whether there is substantial evidence creating a genuine issue of material fact, this Court must examine the record in a light most favorable to the nonmoving party, and it must resolve doubts in favor of the nonmoving party. Martin v. Arnold, 643 So.2d 564 (Ala. 1994);Harbison v. Albertville Nat'l Bank, 495 So.2d 1084 (Ala. 1986).
The general principles of landowner liability are well settled. These principles were laid out in Tolbert v. Gulsby,333 So.2d 129 (Ala. 1976), and the pertinent principles are stated there as follows:
 "[T]he duty owed by a landowner depends on the status of the injured party in relation to the defendant's land. If the injured party is . . . a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him. 'Under ordinary conditions trespassing children, or children on the land of another as bare licensees, occupy the same position as trespassing adults.' "
333 So.2d at 131 (quoting Alabama Great Southern R.R. v. Green,276 Ala. 120, 159 So.2d 823 (1964)) (citations omitted).
The Court in Tolbert adopted Restatement (Second) of Torts § 339 (1965), as the standard to be applied in "attractive nuisance" or "artificial condition" cases involving personal injuries to children, whether they are mere trespassers or are licensees. Tolbert, supra, at 135. Section 339 is quoted inTolbert:
 "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
Tolbert, supra, at 133-34; see also Motes v. Matthews,497 So.2d 1121, 1123 (Ala. 1986). All five conditions set out in § 339 must be met before a landowner will be held liable for injury to a trespassing child caused by an artificial condition on the land. Weatherby v. Meredith, 341 So.2d 139, 140 (Ala. 1976).
The plaintiff and Norfolk Southern argue the question whether the cut constitutes an "artificial condition" — so that § 339 and its heightened duty requirements would apply — or whether the cut should be considered a *Page 731 
natural condition, in which case the conventional duty requirements would apply. Norfolk Southern refers to a number of decisions from other jurisdictions, in which courts have treated artificial conditions as natural conditions when the conditions are sufficiently similar to natural conditions.See, e.g., Knight v. Kaiser Co., 48 Cal.2d 778, 782-83,312 P.2d 1089, 1092 (1957); McDermott v. Kaczmarek, 2 Wn. App. 643,653-54, 469 P.2d 191, 197-98 (1970).
This Court need not decide whether the cliff or cut should be treated as artificial, rather than natural, because the summary judgment is due to be affirmed even under the heightened standard of care. Although the burden placed on a landowner in terms of the landowner's duty to protect trespassing children is higher with regard to artificial conditions, our decision does not turn on Norfolk Southern's duty to Dana or on Norfolk Southern's knowledge of previous child trespassers, including Dana. Rather, our decision turns on Dana's knowledge of the risk and his concurrent ability to appreciate that risk. Section 339(c) makes a lack of knowledge of the risk and a lack of ability to appreciate that risk an element of a plaintiff's prima facie case. See Tolbert, supra at 133-34. As explained below, the evidence establishes without question that Dana appreciated the risk of walking along the top of the cut.
This Court will assume, without deciding, that Dana can be characterized as a "child" for purposes of § 339. The Court makes this assumption based upon Lyle v. Bouler, 547 So.2d 506
(Ala. 1989). According to Lyle, § 339 dispenses with the common law's arbitrary age limitation, so that children over the age of 14 are no longer presumed to be totally responsible for their own actions. In place of the age limitation, the Lyle
Court adopted a series of factors to be taken into account on a case-by-case basis, essentially replacing a presumption with a jury question.[2] Lyle, supra, at 507-08.
Viewing the evidence in a light most favorable to the non-moving party, a reasonable finder of fact could find only that Dana was completely and fully aware of the danger he was putting himself in by trespassing onto Norfolk Southern's property in the dark. Although Dana's deposition testimony indicates that he felt there was not "that much of a danger" because, he said, "so many people go up there," the only reasonable conclusion from the evidence is that Dana, in attempting to walk along a steep slope directly above a 50- to 60-foot cut, consciously understood, recognized, and appreciated the risk and consequences of falling off the edge of the cut. Likewise, it is irrelevant that Dana was trying to avoid the edge of the cut, because the record indicates that he was fully aware of his position in relation to the cut, and, in fact, used the fence for safety by grasping it with his hand as he walked. He fell only after he had progressed beyond the point where the fence turned away from the cut and he could no longer hold on to it. In addition, his knowledge and appreciation of the danger was also the product of two previous daytime visits, and it is uncontested that at the time of the accident he was a normal 16-year-old boy, with no mental or physical limitations.
Section 339(c) is very specific with regard to the lack of knowledge that must be proven before a landowner will be held liable for injuries to a child trespasser caused by an artificial condition. Further, the commentary to § 339(c) provides valuable insight into the § 339(c) requirements for imposing liability on a landowner. Comment m to § 339 reads:
 "A possessor of land is . . . under a duty to exercise reasonable care to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in *Page 732 
which they are likely to realize [sic]. The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less chooses to encounter it out of recklessness or bravado."
(Emphasis added.)
Landowners have no duty under § 339 to protect children from their own "immature recklessness," when the danger is known and appreciated by them. See cmt. m. Thus, a landowner is not subject to liability when a child knows of a danger and appreciates the risk involved, but chooses to go forward and to encounter the danger out of "recklessness or bravado." See cmt. m.
Consequently, we conclude that the plaintiff produced no substantial evidence of one of the essential elements of his claim. We should note that the plaintiff argues that Dana's "appreciation of risk" is a question of fact for the jury. However, because the evidence shows without dispute that Dana in fact appreciated the risk, Norfolk Southern was entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.
AFFIRMED.
MADDOX, HOUSTON, COOK, and BUTTS, JJ., concur.
KENNEDY, J., concurs in the result.
[1] The complaint named John P. Thomas as a defendant, in addition to Norfolk Southern Railway Company, Inc. The summary judgment was in favor of both Norfolk Southern and John P. Thomas. However, the notice of appeal names only Norfolk Southern as appellee. The appellant's brief makes no argument for reversal of the judgment as it related to Thomas. Thus, this Court deems the judgment to have become final, as to Thomas, without an appeal, and we will treat Norfolk Southern as the only appellee.
[2] The Lyle factors include:
 "(1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child."
547 So.2d at 508.