686 So.2d 1100 (1996)
Robert RICKETTS, individually and as father and next friend of Eric Ricketts, a minor
v.
NORFOLK SOUTHERN RAILWAY COMPANY.
1941267.
Supreme Court of Alabama.
June 14, 1996.
Rehearing Denied November 27, 1996.
*1101 Kenneth Ingram, Jr. of Morris, Haynes, Ingram & Hornsby, Alexander City, and Fred Wood of Green, Wood & Howell, Hamilton, for Appellant.
Morris W. Savage of Bankhead & Savage, Jasper, Crawford S. McGivaren, Jr. of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for Appellee.
*1102 SHORES, Justice.
The plaintiff Robert Ricketts appeals from a judgment based on a directed verdict for the defendant Norfolk Southern Railway Company, in a personal injury action. We reverse and remand.
Ricketts's action is based on injuries to his son, Eric Ricketts, who, at age 14, was severely injured in a fall from the Railroad's Brushy Creek trestle in Marion County, Alabama. The Brushy Creek trestle is 187 feet high, with a span of 1230 feet; it is the fifth highest trestle on the Norfolk Southern line. It is of "open deck" construction, meaning that a person standing on the trestle can look between the railroad ties to the ground below. There are no rails or banisters on the side of the trestle. In 1988, Norfolk Southern purchased the railroad line extending from Centralia, Illinois, to Haleyville, Alabama, which includes the Brushy Creek trestle. Norfolk Southern has never conducted railroad operations along that portion of the line from Hackleburg south to Haleyville; the Brushy Creek trestle is located along that portion. In December 1992, the railroad petitioned the Interstate Commerce Commission for permission to abandon the line between Red Bay and Haleyville, including the Brushy Creek trestle.
On the afternoon of September 14, 1993, Eric Ricketts and two companions, Sam McGough and Bubba Branch, drove their four-wheel all-terrain vehicles ("ATVs") out onto the trestle. Because the ATVs would not fit flat on the trestle deck, the boys rode them with the left wheels perched on top of one rail. At a point where he was 160 feet above the ground, Eric's ATV got stuck. As he attempted to get his ATV loose, he fell from the trestle, sustaining severe injuries. Eric was in a coma for four months following the accident. He is now spastic and can do nothing to help care for himself. Expensive shots are needed each three months to keep his spasticity under control. He requires 24-hour supervised care and will require such care for the rest of his life.
On July 12, 1994, Robert Ricketts, as Eric's father and next friend, sued Southern Railway Company, T.A. Heilig, Howard Frye, and fictitiously named defendants. Eric's mother, Shirley Ricketts, was later added as a plaintiff. The Rickettses' complaint alleged liability based on negligence, wantonness, the principle stated in Restatement (Second) of the Law of Torts, § 339 (1965), and the attractive nuisance theory. Norfolk Southern Railway Company (as successor in interest to Southern Railway Company) and defendants Heilig and Frye answered, denying that § 339 of the Restatement has any application in this case and pleading the affirmative defenses of contributory negligence and assumption of the risk. The court entered a summary judgment for the defendants on the plaintiffs' attractive nuisance claim.
On April 10, 1995, the trial began. The plaintiffs' case was concluded on April 17, 1996; at that time the plaintiffs dismissed defendants Heilig and Frye, with prejudice. Norfolk Southern then moved for a directed verdict. On April 19, 1995, Judge Bobby R. Aderholt granted Norfolk Southern's motion for a directed verdict, in open court:
"THE COURT: All right. After careful consideration of the criteria set out in [Lyle v. Bouler, 547 So.2d [506] 507 (Ala. 1989),] and the various elements of Section 339 of the Restatement of Torts, it is the Court's opinion that Section 339 is not applicable in this case and the court directs a verdict for the defendant [as to both] negligence and wantonness.
". . . .
"A more definite statement of findings will be forthcoming in an order."
On June 9, 1995, the trial judge issued the following order, which failed to make a more definite statement of findings:
"The Court having considered the motions of defendants for a directed verdict filed at the conclusion of the plaintiffs' case, ... is of the opinion that such motions should be ... granted. Accordingly, judgment is hereby entered for the defendants in this case."
The plaintiffs moved for a new trial, which was denied by the trial court. Robert Ricketts appealed.
*1103 We must determine whether the trial court erred in directing a verdict on both the negligence and wantonness counts for the defendant Norfolk Southern Railway. We look first to the standard of review applicable in a case like this:
"The standard of review applicable to a directed verdict or to a denial of a motion for a directed verdict is whether the nonmoving party has presented substantial evidence in support of his position. If he has not, then a directed verdict is proper. Bailey v. Avera, 560 So.2d 1038, 1039 (Ala. 1990). A verdict is properly directed only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury to determine. Woodruff v. Johnson, 560 So.2d 1040 (Ala.1990). Moreover, whether to direct a verdict is not a matter within the discretion of the trial court; on review no presumption of correctness attaches to such a ruling. McCord v. McCord, 575 So.2d 1056, 1057 (Ala.1991); Barksdale v. St. Clair County Comm'n, 540 So.2d 1389 (Ala.1989)."
K.S. v. Carr, 618 So.2d 707, 713 (Ala.1993).
The trial judge stated in his order that he had considered the criteria set out in Lyle v. Bouler, 547 So.2d 506 (Ala.1989). In Lyle v. Bouler the question was whether a landowner may owe a duty of care to a trespassing minor over the age of 14. The trial court entered a summary judgment for the defendant in Lyle v. Bouler on the grounds that no duty was owed to trespassing minors over the age of 14. In reversing that summary judgment, this Court stated:
"For over 50 years, this Court continued to use the age of 14 as the demarcation line in determining whether a child would be liable for his actions. In 1976, however, this Court ruled that `for clarity and certainty's sake now and in the future,' § 339 of the Restatement (Second) of Torts (1965) would be the law. Tolbert v. Gulsby, 333 So.2d 129, 135 (Ala.1976).
"Justice Houston, writing for the Court in Motes v. Matthews, 497 So.2d 1121, 1122 (Ala.1986), reiterated our adoption of § 339, regardless of whether the child was a trespasser or a licensee. Because the Court has never reconciled § 339 with Central of Georgia [R.R. v. Robins, 209 Ala. 6, 95 So. 367 (1923)], the two standards continue to be applied, although they are clearly contradictory. In order to prevent further confusion, we reject the 14-year age limitation imposed in Central of Georgia and reassert our adherence to § 339, Restatement (Second) of Torts (1965).
"Section 339 provides:
"`A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
"`(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
"`(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
"`(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
"`(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"`(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.'
"Subsection (c) and the comment to § 339 provide guidance in determining when a child assumes responsibility for his injuries. The comment states that few jurisdictions still use arbitrary age limits because `in our present hazardous civilization some types of danger have become common, which an immature adolescent may reasonably not appreciate, although an adult may be expected to do so.'
"Most jurisdictions have held that a child [below] the age of 14 may recover for injuries sustained when trespassing on the *1104 land of another. Others have extended recovery to 16 years and beyond. Skaggs v. Junis, 27 Ill.App.2d 251, 169 N.E.2d 684, 689 (1960) (16-year-old plaintiff allowed recovery); Hendricks v. Peabody Coal Co., 115 Ill.App.2d 35, 253 N.E.2d 56, 57 (1969) (16-year-old plaintiff allowed recovery); Boyer v. Guidicy Marble, Terrazzo & Tile Co., 246 S.W.2d 742, 746-747 (Mo.1952) (17-year-old plaintiff allowed recovery).
"It is clear that § 339 recognized the irrationality of assigning arbitrary age limits to determine a time when a child must assume total responsibility for his actions.
"By rejecting the age limitation imposed in Central of Georgia, this Court now embraces § 339 as the only authority for determining whether a child may recover. This is not to say that age should not be a factor at all. The comment to § 339 clearly states that recovery will be less likely as the age of the child increases. Age may be an important factor in determining liability, but it is one of many factors that must be examined.
"Elements that merit examination are: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child. After these elements have been analyzed, the trial court must examine the landowner's conduct, in accordance with the remainder of § 339."
Lyle v. Bouler, 547 So.2d at 507-08.
Judge Aderholt stated that, having considered the criteria set out in Lyle v. Bouler and the various elements of § 339 of the Restatement, he had concluded that under the facts of this case there could be no liability under § 339. We therefore must determine whether Judge Aderholt erred in so holding, and in determining that we consider the factors enumerated in Lyle v. Bouler.
Eric's mother testified that Eric was an average 14-year-old boy who made average grades and who at the time of his injury had just begun the 9th grade. Eric's mother described him as "all boy" who "did what he had to do to get by." There is no evidence that Eric knew that anyone had ever been injured from being on the trestle. In fact, there was evidence that he knew that persons had ridden across the trestle with apparent impunity. There was testimony that Eric knew that an uncle of his had ridden a motorcycle across the trestle.
Under § 339, "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one that the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children." Norfolk Southern contends that it had no knowledge at the time of the accident that children were trespassing on the trestle. However, the testimony indicates that the Brushy Creek trestle has been a local attraction for years. A Boy Scout leader, Frank Herndon, testified that he had brought scouts from Aberdeen, Mississippi, to rappel from the trestle. John Thomas Adams, whose home is located within a mile of the trestle, testified that he knew of at least four ways to reach the trestle by vehicle, primarily by 4-wheel-drive vehicles. He himself had taken sightseers to it in his pickup truck. He has seen as many as 15 people on the trestle at one time. The chief of police of the Town of Bear Creek testified that in 1991 he had specifically informed the railroad's employees, including a railroad policeman, of the fact that men, women, and children were frequently on the trestle and suggested to them that it be barricaded. On July 4, 1993, approximately two months before Eric's fall, the crossties on the trestle were set afire by fireworks that were set off on the trestle. The fire was reported to Donald Benson, a track supervisor for Norfolk Southern, who that night attempted to put it out with water from his truck. As a result of the fire, 32 ties in a row on the trestle were burned out. Howard Frye, the railroad's bridge and building supervisor, made a written report of the damage made *1105 by the fire. In his testimony, he agreed that the trestle is dangerous. Thus, there was evidence from which a jury could conclude that the criteria of § 339(a) and (b) were met in this case.
We next look at § 339(c), which both sides suggest in their briefs is the crux of this case. In Hollis v. Norfolk Southern Ry., 667 So.2d 727 (Ala.1995), this Court held that § 339(c) "makes a lack of knowledge of the risk and a lack of ability to appreciate that risk an element of a plaintiff's prima facie case." In affirming a summary judgment for the defendant railroad in Hollis, a case in which a 16-year-old was severely injured, this Court stated:
"Landowners have no duty under § 339 to protect children from their own `immature recklessness,' when the danger is known and appreciated by them. See cmt. m. Thus, a landowner is not subject to liability when a child knows of a danger and appreciates the risk involved, but chooses to go forward and to encounter the danger out of `recklessness or bravado.' See cmt. m."
667 So.2d at 732. The evidence in Hollis was that the injured child, Dana Hollis, was a licensed automobile driver and had become a licensed motorcycle driver at age 14. He was injured when he fell off the edge of a railroad cut. His father testified that he had trusted his son's judgment and had allowed him latitude to make many of his own decisions. This Court concluded that the trial court properly entered the summary judgment for the railroad, because the evidence showed that Dana consciously recognized, understood, and appreciated the risk and the consequences of falling off the edge of the cut. This conclusion was based upon the testimony of both Dana and his father.
Eric cannot testify. However, Sam McGough, who was with Eric on the lead ATV, testified. Norfolk Southern cites a statement Sam made two days after the accident to a railway investigator who had been sent to McGough's home. At trial Sam McGough was questioned as follows:
"Q. Well, back to this occasion in the tape at your house two days after the accident. Didn't you tell Mr. Wickwire that Eric had a helmet on and took it off before you got on the bridge, and Eric said, if he fell off the helmet would not help him anyway?
A. Yes, sir."
Norfolk Southern emphasizes this statement as proof that Eric Ricketts fully understood and appreciated the risk of going onto the trestle. As Dean Prosser said in his article, Trespassing Children, 47 Cal. L.Rev. 427 (1959), "`appreciation' of the danger is what is required to bar recovery, rather than mere knowledge of the existence of the condition, or of some possible risk." Id. at 462. The question of a child's appreciation of danger is ordinarily one for the jury and not for the court. Patterson v. Palley Mfg. Co., 360 Pa. 259, 267, 61 A.2d 861, 865 (1948). As this Court has said:
"In adopting § 339, this Court recognized the special duty owing to a class of plaintiffs, defined in § 339(c), whose natural proclivity for wonder and adventure often exceeds their sense of impending danger. See Motes v. Matthews, 497 So.2d 1121 (Ala.1986). Whether a particular plaintiff falls within this class will ordinarily present a jury question. See Lyle v. Bouler, 547 So.2d 506 (Ala.1989)."
Henderson v. Alabama Power Co., 627 So.2d 878, 881 (Ala.1993). Thus, the question whether the criterion of § 339(c) was met was for the jury's determination.
Finally we consider § 339(d)"the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved"and § 339(e)"the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
Norfolk Southern does not contend that it had placed any barricades or warning signs on the Brushy Creek trestle. As previously noted, several local residents testified concerning the number of visitors to the trestle. Mike Mauldin, who lives a mile from the trestle, testified that the trestle is a hangout for kids and there are two or three roads and several trails leading to it from county roads. In addition, Mauldin testified that he had seen dune buggies and motorcycles cross the trestle. He estimated that *1106 several times a month people stop at his home to ask for directions to the trestle. The Bear Creek police chief, in whose police jurisdiction the Brushy Creek trestle lies, testified not only that he had observed both adults and children on the trestle, but that in 1991 he had warned a group of Norfolk Southern employees, including a railroad policeman, that they had a problem with adults and children being on the trestle frequently.
The trial court directed a verdict both as to negligence and as to wantonness. In Henderson v. Alabama Power Co., supra, this Court explained that the duty set forth in § 339 may form the basis of a wantonness claim:
"[T]he duty set forth in § 339 may also form the basis of a cause of action for wantonnesssubject to a `heightened knowledge' requirement....
"This `heightened knowledge' requirement for wantonness has been defined as `the conscious doing of some act or the omission of some duty [while] under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result.' Lewis v. Zell, 279 Ala. 33, 36, 181 So.2d 101, 104 (1965). Wantonness will be found where the evidence demonstrates `that with reckless indifference to the consequences [a party] consciously and intentionally did some wrongful act or omitted some known duty which produced the result.' Id.

"In the context of § 339, wantonness may be summarized as the defendant's conscious acts or omissions in the maintenance of an artificial condition on a place where the defendant knows children will likely trespass, accompanied by the awareness that they will thereby expose themselves to a high probability of injury. It need not be shown that the defendant specifically anticipated the trespass of the plaintiff, Tolbert [v. Gulsby], 333 So.2d [129] at 134 [(Ala.1976)], but only that the defendant anticipated trespasses by members of the protected class to which the plaintiff belonged, and that such persons trespassing would thereby be exposed to a high risk of injury due to the defendant's acts or omissions. The defendant's knowledge, although the sine qua non of wantonness, `may be made to appear like any other fact, by showing circumstances ... from which the fact of knowledge is a legitimate inference.' Blount Brothers Constr. Co. v. Rose, 274 Ala. 429, 437, 149 So.2d 821, 830 (1962).*
* "Additionally, the net inference derived from balancing the `utility ... of maintaining the condition and the burden of eliminating the danger,' § 339(d), may be an aggravating or mitigating factor, depending on the circumstances."
627 So.2d at 881-82. (Emphasis original; some emphasis omitted.) The trial court erred in entering the summary judgment as to the wantonness count, because there was evidence from which a jury could legitimately infer heightened knowledge.
Norfolk Southern argues that § 339 does not apply, because it contends, Eric Ricketts was engaged in an adult activity at the time of his fall and is therefore held to an adult standard of care. The railroad cites Gunnells v. Dethrage, 366 So.2d 1104 (Ala. 1979), in which a minor fell asleep while operating an automobile on a public highway, struck a bridge abutment, and injured his minor passenger. This Court held the minor to the same standard as all other users of the highways. Id. The "adult activity" decisions have been used to hold minors liable for injuries sustained by others, as a result of the minor's adult activity. The rationale behind those decisions is that it would be unfair to the public to apply a double standard of care to drivers on public highways, one applicable to adults and another applicable to minors. The record does not reflect that Eric was engaged in an "adult activity" within the principle of these cases.
Norfolk Southern also contends that § 339 does not apply in cases involving falls, because, it says, all children recognize the dangers from falling. In McHugh v. Reading Co., 346 Pa. 266, 30 A.2d 122 (1943), and Arbogast v. Terminal R.R. Ass'n., 452 S.W.2d 81 (Mo.1970), the risk of falling was held to be an open and obvious danger to the child, and therefore § 339(c) was held not applicable. In Lyle v. Bouler, supra, a 16-year-old boy, holding a valid driver's license, *1107 drove with a friend to a clay pit that had not been used commercially for some years. They climbed up the sides of the pit to see which of the two could climb the highest. During one climb, the two came to a ledge and sat on it to rest. Several minutes later, the ledge collapsed and the two fell 15 feet to the bottom. This Court reversed a summary judgment for the defendant landowner in Lyle v. Bouler, reasserting our adherence to § 339, Restatement (Second) of Torts (1965). This was an obvious recognition that the ultimate question was not whether the child appreciated the danger of falling, but rather was whether the child had a full knowledge of and appreciation of the risk involved.
For the reasons stated above, the judgment of the trial court based on the directed verdict for the defendant on the negligence and wantonness counts, is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., concurs specially.
MADDOX, and HOUSTON, JJ., dissent.
INGRAM, J., recused.
HOOPER, Chief Justice (concurring specially).
I concur with the majority opinion. However, I write because I believe this Court should be clear in the precedent we are setting. I do not believe a reversal in this case can be justified without overruling Hollis v. Southern Ry., 667 So.2d 727 (Ala.1995). Hollis correctly states that this Court has adopted § 339, Restatement (Second) of Torts (1965), as the legal standard for imposing liability on a landowner for harm to children that have trespassed onto the landowner's property. Hollis correctly states that § 339(c) does not impose liability on a landowner for the landowner's not protecting children "against harm resulting from their own immature recklessness in the case of known and appreciated danger." 667 So.2d at 732 (quoting cmt. m).
The evidence in this case cannot support a finding that Eric Ricketts did not appreciate the danger he was facing. The danger of falling from a great height is obvious even to a normal 14-year-old. Eric Ricketts was a normal 14-year-old, and the record contains no evidence to support a finding that he did not fully appreciate the danger he was facing. This Court should openly state that it is modifying the Court's adoption of Restatement § 339(c) to include a limited duty of landowners to guard against children's harming themselves through their own immature recklessness. The duty would be limited by the other factors present in Restatement § 339(a),(b),(d), and (e).
This duty should be further limited to cases like the present one, where the landowner had knowledge that children had committed, and were likely to continue to commit, dangerous, immature acts on the property. Further, this duty is imposed only in cases where the landowner easily and with little burden could have eliminated the risk that children would harm themselves through immature, reckless acts that were related to the nature of the artificial condition upon the land. The reason for this duty is the known tendency of many children to carry out reckless acts and the fact that many of the harms resulting from these acts can be easily prevented at a very low cost.
Liability would be imposed only where the landowner does not have a valid affirmative defense. In this case, Norfolk Southern could easily have erected barricades and prevented this tragic event. The defendant claims that federal law prevented it from putting up the barricades. This is an issue the trial court needs to settle; however, the plaintiff should be allowed to fully present the evidence that contradicts the defendant's claim that Interstate Commerce Commission regulations prevented the barricading of the railroad.
The trial judge correctly followed the precedent set by Hollis, supra. However, this Court should openly state that by today's decision it is increasing the duty owed by landowners, so they may be placed on notice. The jury should decide whether liability is *1108 appropriate in this case. A clear standard will prevent needless litigation as to the duty of landowners in future cases of this type.
MADDOX, Justice (dissenting).
I concur in Justice Houston's dissent. I write only in order to set out specifically why I cannot distinguish this case from the Court's recent decision in Hollis v. Norfolk Southern Ry., 667 So.2d 727 (Ala.1995), and why I believe that case controls.
In Hollis, 16 year-old Dana Joseph Hollis was severely injured while trespassing on the property of Norfolk Southern Railway. His father, individually and in Dana's behalf, sued alleging that Norfolk Southern Railway had been negligent in failing "to install a fence and to place `no trespassing' signs around the area where Dana fell" and that the place where Dana fell was an attractive nuisance. 667 So.2d at 728. The specific facts of that case are as follows (as stated in this Court's opinion):
"At approximately 2:30 a.m. on Saturday, October 10, 1992, Dana and two friends walked with flashlights, without permission, across the land adjacent to Norfolk Southern's land, to gain access to railroad tracks and a tunnel owned and maintained by Norfolk Southern. The boys' objective was to approach the tunnel so that at least one of Dana's friends could see the tunnel for the first time.
"The tunnel, located in the Cook Springs community of St. Clair County, was carved into the side of a mountain in the late 19th century. The construction of the tunnel and the laying of the tracks had necessitated a `cut' across the side of the mountain; the cut resembles a sheer cliff running along and above the tracks. At the location of Dana's fall, the cliff rises above the tracks approximately 50 to 60 feet. Above the edge of the cut is a slope that runs 6 to 15 feet from the edge, up to the boundary of land not owned by Norfolk Southern.
"Dana and his two friends trespassed across adjoining private property to reach the top of the cut above the tracks and the tunnel. It is undisputed that Dana and his friends then trespassed onto Norfolk Southern's property. Their intention was to walk along the outer fence line of the adjoining property and then to continue to walk parallel to the edge of the cut until reaching a spot where the cut was only two to three feet above the tracks. Dana was leading the way, and this path led the three boys away from the tunnel. After reaching the end of the fence line, Dana and his two friends continued to walk parallel to the cut, with flashlights in hand, across the property of Norfolk Southern. According to Dana's deposition testimony, after walking past the end of the fence, he slipped on wet leaves and slid approximately 6 to 10 feet on his back and side to the edge of the cut and then over the edge, landing on the tracks below. The fall was approximately 50 to 60 feet. As a result of the fall, Dana received severe back and head injuries that have rendered him a paraplegic.
"In addition, the evidence tended to show the following: First, Dana had visited this area twice before during daylight hours. On both of those occasions, he was trespassing, and on both occasions he observed the cut from the tracks; he testified that he understood that a fall from the top of the cut would cause serious injury. Second, he realized that there was a fairly steep slope between the top of the cut and the fence that ran parallel to the cut and the tracks, and that the fence was only several feet from the edge of the cut:
"`Q. But you had seen this cliff and mouth of the tunnel beforehand, and you knew it was a pretty steep drop right there, didn't you?
"`A. Yeah, about six, seven foot [sic] past there.
"`Q. About six or seven feet past what?
"`. . . .
"`A. It's like six or seven feet between the fence and the edge.'
Dana understood, on the basis of common sense, that if he was not careful, he could be seriously injured:
"`Q. I'm a little confused with why you kept going straight when you got to the corner of the fence?

*1109 "`A. Because, if you went straight down, you'd have fell [sic] right there. I mean ... it would be stupid to walk down here at the end of the post, take a right and fall off a cliff, you know.'
"More importantly, as Dana stated in his deposition, on the morning of the accident he knew of two safer routes that he could have taken to reach the tunnel. Unfortunately, he chose the riskier path in the dark of early morning. He also testified that he was holding on to the fence to avoid slipping and falling off the edge of the cut. He understood that the edge of the cut was a short distance down the steep slope and that a fall could result in severe injury."
667 So.2d at 729-30.
Based on that set of facts, the trial court granted Norfolk Southern's motion for summary judgment. This Court affirmed, stating that its decision did not "turn" on Norfolk Southern's knowledge of other child trespassers, but "on Dana's knowledge of the risk and his concurrent ability to appreciate that risk." 667 So.2d at 731. It stated, "Section 339(c) [Restatement (Second) of Torts] makes a lack of knowledge of the risk and a lack of ability to appreciate that risk an element of a plaintiff's prima facie case." 667 So.2d at 731. The Court went on to state:
"Section 339(c) is very specific with regard to the [child's] lack of knowledge that must be proven before a landowner will be held liable for injuries to a child trespasser caused by an artificial condition. Further, the commentary to § 339(c) provides valuable insight into the § 339(c) requirements for imposing liability on a landowner. Comment m to § 339 reads:
"A possessor of land is ... under a duty to exercise reasonable care to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize [sic]. The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less chooses to encounter it out of recklessness or bravado.'
"(Emphasis added [in Hollis].)
"Landowners have no duty under § 339 to protect children from their own `immature recklessness,' when the danger is known and appreciated by them. See cmt. m. Thus, a landowner is not subject to liability when a child knows of a danger and appreciates the risk involved, but chooses to go forward and to encounter the danger out of `recklessness or bravado.' See cmt. m.
"Consequently, we conclude that the plaintiff produced no substantial evidence of one of the essential elements of his claim. We should note that the plaintiff argues that Dana's `appreciation of risk' is a question of fact for the jury. However, because the evidence shows without dispute that Dana in fact appreciated the risk, Norfolk Southern was entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P."
667 So.2d at 731.
The majority's opinion in the present case points out many examples of trespassing by other persons in the area where Eric Ricketts fell, but this Court pointed out in Hollis that the question of landowner liability in cases of this type does not "turn" on whether the defendant had knowledge of previous trespassers. The issue here, as in Hollis, is whether the child trespasser lacked a knowledge of the risk and/or lacked an ability to appreciate that risk.
*1110 The majority, quoting a 1959 California Law Review article, states that "`"appreciation" of the danger is what is required to bar recovery, rather than mere knowledge of the existence of the condition, or of some possible risk'" and that whether the child appreciated the danger is a question for the jury. 686 So.2d at 1105. Even if we applied that liberal test to the facts in this case, we would be required to reach the same result we reached in Hollis. Norfolk Southern presented evidence indicating that Eric appreciated the danger, but the plaintiffs, like the plaintiff in Hollis, presented no evidence that the injured child trespasser lacked knowledge of the risk or lacked an ability to appreciate the risk. Evidence of such a lack of knowledge or lack of ability to appreciate the risk is necessary for the plaintiff to present a prima facie case under Restatement § 339. 667 So.2d at 731.
Eric's mother testified that he was an average boy of 14 and that in school he made average grades. Eric was familiar with the bridge from which he fell. Furthermore, his companion on the day of the accident, Sam McGough, testified that before crossing the bridge Eric took off his helmet and said that if he fell off the bridge the helmet would not help him. This statement clearly shows that Eric appreciated the danger of falling off the bridge and injuring himself if he attempted to cross it. The plaintiffs presented no evidence to refute this evidence that Eric knew of, and appreciated, the risk that he could fall off the bridge. Consequently, the plaintiffs failed to meet their burden of proving an essential element under Restatement § 339 that Eric lacked knowledge of, or lacked an ability to appreciate, the risk associated with his conduct. Thus, the trial judge properly directed a verdict for Norfolk Southern, based on the rule applied in Hollis.
With the issuance of this opinion, the legal community is now faced with two conflicting holdings by the state's highest Court that I believe cannot be reconciled. I believe the majority opinion in this case incorrectly applies the law.
HOUSTON, Justice (dissenting).
I concurred in Justice Almon's case of Hollis v. Norfolk Southern Ry., 667 So.2d 727 (Ala.1995). I cannot distinguish this case from Hollis, but I can distinguish it from Motes v. Matthews, 497 So.2d 1121 (Ala. 1986), a case that I authored. In Hollis, we noted that the plaintiff argued, as Mr. Ricketts argues in this case, that the minor's "appreciation of the risk" was a question of fact for the jury, but we held that "because the evidence shows without dispute that Dana in fact appreciated the risk, Norfolk Southern was entitled to a judgment as a matter of law." 667 So.2d at 732. There is evidence that Eric appreciated the risk; there is no evidence that he did not. "Section 339(c) [Restatement (Second) of Torts] makes a lack of knowledge of the risk and a lack of ability to appreciate that risk an element of a plaintiff's prima facie case." Hollis, 667 So.2d at 731.
I would affirm the judgment of the trial court; therefore, I must dissent.
MADDOX, J., concurs.