I concur in Justice Houston's dissent. I write only in order to set out specifically why I cannot distinguish this case from the Court's recent decision in Hollis v. Norfolk Southern Ry.,667 So.2d 727 (Ala. 1995), and why I believe that case controls.
In Hollis, 16 year-old Dana Joseph Hollis was severely injured while trespassing on the property of Norfolk Southern Railway. His father, individually and in Dana's behalf, sued alleging that Norfolk Southern Railway had been negligent in failing "to install a fence and to place 'no trespassing' signs around the area where Dana fell" and that the place where Dana fell was an attractive nuisance. 667 So.2d at 728. The specific facts of that case are as follows (as stated in this Court's opinion):
 "At approximately 2:30 a.m. on Saturday, October 10, 1992, Dana and two friends walked with flashlights, without permission, across the land adjacent to Norfolk Southern's land, to gain access to railroad tracks and a tunnel owned and maintained by Norfolk Southern. The boys' objective was to approach the tunnel so that at least one of Dana's friends could see the tunnel for the first time.
 "The tunnel, located in the Cook Springs community of St. Clair County, was carved into the side of a mountain in the late 19th century. The construction of the tunnel and the laying of the tracks had necessitated a 'cut' across the side of the mountain; the cut resembles a sheer cliff running along and above the tracks. At the location of Dana's fall, the cliff rises above the tracks approximately 50 to 60 feet. Above the edge of the cut is a slope that runs 6 to 15 feet from the edge, up to the boundary of land not owned by Norfolk Southern.
 "Dana and his two friends trespassed across adjoining private property to reach the top of the cut above the tracks and the tunnel. It is undisputed that Dana and his friends then trespassed onto Norfolk Southern's property. Their intention was to walk along the outer fence line of the adjoining property and then to continue to walk parallel to the edge of the cut until reaching a spot where the cut was only two to three feet above the tracks. Dana was leading the way, and this path led the three boys away from the tunnel. After reaching the end of the fence line, Dana and his two friends continued to walk parallel to the cut, with flashlights in hand, across the property of Norfolk Southern. According to Dana's deposition testimony, after walking past the end of the fence, he slipped on wet leaves and slid approximately 6 to 10 feet on his back and side to the edge of the cut and then over the edge, landing on the tracks below. The fall was approximately 50 to 60 feet. As a result of the fall, Dana received severe back and head injuries that have rendered him a paraplegic.
 "In addition, the evidence tended to show the following: First, Dana had visited this area twice before during daylight hours. On both of those occasions, he was trespassing, and on both occasions he observed the cut from the tracks; he testified that he understood that a fall from the top of the cut would cause serious injury. Second, he realized that there was a fairly steep slope between the top of the cut and the fence that ran parallel to the cut and the tracks, and that the fence was only several feet from the edge of the cut:
 " 'Q. But you had seen this cliff and mouth of the tunnel beforehand, and you knew it was a pretty steep drop right there, didn't you?
 " 'A. Yeah, about six, seven foot [sic] past there.
" 'Q. About six or seven feet past what?
" '. . . .
 " 'A. It's like six or seven feet between the fence and the edge.'
 Dana understood, on the basis of common sense, that if he was not careful, he could be seriously injured:
 " 'Q. I'm a little confused with why you kept going straight when you got to the corner of the fence? *Page 1109 
 " 'A. Because, if you went straight down, you'd have fell [sic] right there. I mean . . . it would be stupid to walk down here at the end of the post, take a right and fall off a cliff, you know.'
 "More importantly, as Dana stated in his deposition, on the morning of the accident he knew of two safer routes that he could have taken to reach the tunnel. Unfortunately, he chose the riskier path in the dark of early morning. He also testified that he was holding on to the fence to avoid slipping and falling off the edge of the cut. He understood that the edge of the cut was a short distance down the steep slope and that a fall could result in severe injury."
667 So.2d at 729-30.
Based on that set of facts, the trial court granted Norfolk Southern's motion for summary judgment. This Court affirmed, stating that its decision did not "turn" on Norfolk Southern's knowledge of other child trespassers, but "on Dana's knowledge of the risk and his concurrent ability to appreciate that risk." 667 So.2d at 731. It stated, "Section 339(c) [Restatement (Second) of Torts] makes a lack of knowledge of the risk and a lack of ability to appreciate that risk an element of a plaintiff's prima facie case." 667 So.2d at 731. The Court went on to state:
 "Section 339(c) is very specific with regard to the [child's] lack of knowledge that must be proven before a landowner will be held liable for injuries to a child trespasser caused by an artificial condition. Further, the commentcry to § 339(c) provides valuable insight into the § 339(c) requirements for imposing liability on a landowner. Comment m to § 339 reads:
 "A possessor of land is . . . under a duty to exercise reasonable care to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize [sic]. The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger.
Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less chooses to encounter it out of recklessness or bravado.'
"(Emphasis added [in Hollis].)
 "Landowners have no duty under § 339 to protect children from their own 'immature recklessness,' when the danger is known and appreciated by them. See cmt. m. Thus, a landowner is not subject to liability when a child knows of a danger and appreciates the risk involved, but chooses to go forward and to encounter the danger out of 'recklessness or bravado.' See cmt. m.
 "Consequently, we conclude that the plaintiff produced no substantial evidence of one of the essential elements of his claim. We should note that the plaintiff argues that Dana's 'appreciation of risk' is a question of fact for the jury. However, because the evidence shows without dispute that Dana in fact appreciated the risk, Norfolk Southern was entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P."
667 So.2d at 731.
The majority's opinion in the present case points out many examples of trespassing by other persons in the area where Eric Ricketts fell, but this Court pointed out in Hollis that the question of landowner liability in cases of this type does not "turn" on whether the defendant had knowledge of previous trespassers. The issue here, as in Hollis, is whether the child trespasser lacked a knowledge of the risk and/or lacked an ability to appreciate that risk. *Page 1110 
The majority, quoting a 1959 California Law Review article, states that " ' "appreciation" of the danger is what is required to bar recovery, rather than mere knowledge of the existence of the condition, or of some possible risk' " and that whether the child appreciated the danger is a question for the jury. 686 So.2d at 1105. Even if we applied that liberal test to the facts in this case, we would be required to reach the same result we reached in Hollis. Norfolk Southern presented evidence indicating that Eric appreciated the danger, but the plaintiffs, like the plaintiff in Hollis, presented no evidence that the injured child trespasser lacked knowledge of the risk or lacked an ability to appreciate the risk. Evidence of such a lack of knowledge or lack of ability to appreciate the risk is necessary for the plaintiff to present a prima facie case under Restatement § 339. 667 So.2d at 731.
Eric's mother testified that he was an average boy of 14 and that in school he made average grades. Eric was familiar with the bridge from which he fell. Furthermore, his companion on the day of the accident, Sam McGough, testified that before crossing the bridge Eric took off his helmet and said that if he fell off the bridge the helmet would not help him. This statement clearly shows that Eric appreciated the danger of falling off the bridge and injuring himself if he attempted to cross it. The plaintiffs presented no evidence to refute this evidence that Eric knew of, and appreciated, the risk that he could fall off the bridge. Consequently, the plaintiffs failed to meet their burden of proving an essential element underRestatement § 339 — that Eric lacked knowledge of, or lacked an ability to appreciate, the risk associated with his conduct. Thus, the trial judge properly directed a verdict for Norfolk Southern, based on the rule applied in Hollis.
With the issuance of this opinion, the legal community is now faced with two conflicting holdings by the state's highest Court that I believe cannot be reconciled. I believe the majority opinion in this case incorrectly applies the law.