# Louisville & N. R. R. Co. *v.* Gray.

### Personal Injury Action.

(Decided December 21, 1916.   Rehearing denied February 15, 1917.
74 South. 228.)

1. **Master and Servant; Injury to Servant; Negligence; Sufficiency of Evidence.**—Evidence that defendant railroad's hostler, under a superior's direction, coupled a live engine to a tender of a dead engine on which plaintiff claimed to be working, and moved it a few inches, injuring plaintiff, held insufficient to establish negligence in moving the engine.

2. **Master and Servant; Injury to Servant; Negligence; Sufficiency of Evidence.**—Evidence held insufficient to sustain a jury finding that defendant railroad's hostler negligently failed to stop an engine after hearing plaintiff's outcries, where plaintiff's injuries were caused by a second engine being shoved only a few inches.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by John G. Gray against the Louisville & Nashville Railway Company for damages for personal injuries.   Judgment for plaintiff and defendant appeals.   Reversed and remanded.

EYSTER & EYSTER for appellant.   WERT & LYNNE for appellee.

SAYRE, J.—Appellee, to whom we shall hereafter refer as plaintiff, claimed damages for personal injuries alleged in the first count to have been caused "by the negligence of an engineer or hostler of defendant who then and there had charge or control of an engine of defendant." In the third count negligence is charged against "one of the defendant's employees * * * who had charge or control of a locomotive engine that was being operated or run by said employee." We construe this count as stating substantially the same cause of action as that set forth in the first count with some elaboration that need not here be repeated. In counts A and B, added by amendment, plaintiff's injuries were charged to the negligence of one J. T. Weatherly, count A alleging that said Weatherly, who was then and there in the exercise of superintendence, "negligently caused the tank and an engine, about which the plaintiff was engaged as aforesaid, to strike together with such force as to proximately hurt and injure this plaintiff," while count B alleged that plaintiff's injuries "were proximately caused by the act of a person in the service or employment of defendant, who had charge or control of a locomotive engine operated on and over the said track of the defendant, upon which this plaintiff was engaged in working on another locomotive engine standing on the track, in that said person so in charge of said locomotive engine ran against or struck a tank detached from the engine upon which this plaintiff was working, and caused the same to roll or run against the engine upon which this plaintiff was working and which was done by the person in charge of said engine in obedience to particular instructions given by one J. T. Weatherly, who was then and there employed by defendant and by it delegated with authority in behalf of having engines and tanks coupled, and defendant, as aforesaid, was making a coupling of said engine and tank under the instructions of said person so delegated with authority," who "was negligent in giving the order to make such coupling." The complaint was under the Employers' Liability Act (section 3910 of the Code), of course, and we have only undertaken to state enough of the several counts upon which the case was sent to a jury to show the gist of the action and designate the particular employees to whose negligence plaintiff's injuries are charged.

Plaintiff suffered injuries that must appeal so strongly to the sympathies of any court or jury that it is not inappropriate to

say that under no rule of law or practice have we the power of arbitrators, and that the question of defendant's liability must be determined according to the settled principles that have heretofore obtained in cases of this general character.

(1) Plaintiff's case rested in the main upon his own testimony. He testified that he was at work making some minor repairs upon a locomotive engine. Prior to plaintiff's injury this locomotive had entered the defendant's roadhouse at Decatur, front forward, and at the time was standing dead upon the track. The time was shortly after 1 o'clock a. m. Between 12 and 1 defendant's employees rested and took their midnight meal. Plaintiff, according to his testimony, was engaged in inserting a Carter key in the end of the brake beam on the left side of the engine between the first and second driving wheels. The driving rod, or main side rod, was attached to the third, or main, driving wheel. A side rod connected all the drivers, and this of course operated inside of the main rod. This end of the brake beam was above the rail approximately, but whether a few inches inside or out is not clear. Plaintiff testified:

"At the time I was struck I had started to straighten. I was bent and started to straighten up from the engine just about the time I was struck. The beam where I was trying to put the key through was about $2\frac{1}{2}$ or 3 inches off the floor, and I was stooping over. I was struck somewhere in the right side there and knocked sideways, like that, just as I started to straighten. The struck me [it is so written in the bill of exceptions] and something 'cotch' me here. It was done so quick I couldn't tell what it was, but I was struck right here. After being struck, I was in this position [indicating] laying out, and I was mashed from this hip up under my breast bone and up under my shoulder blades, and I was wedged that way [indicating]. I couldn't get out until they pinched me out, I mean by that, they got pinch bars, and as the rod had me caught, they had to pinch the engine back, and that let me out."

On cross-examination the plaintiff said: "When I was hurt I couldn't tell what caught me. It knocked me down and I couldn't tell what it was."

Nobody saw plaintiff at the time of his injury. The engine upon which he says he was at work came to be moved in this wise: The tender needed some repair and had been detached from its engine. Weatherly, who was in charge of things, di-

rected that a live engine be attached to the tender in order that it be drawn away to the place where it was to be repaired. This live engine was moved upon the turntable, and then an employee aligned the turntable with the track upon which the dead engine stood. Weatherly gave the signal for the movement of the live engine, and this signal was communicated to the hostler operating the engine through the turntable man. The hostler, from his place on the right side of the live engine, could not see the place where plaintiff was, and there is nothing to show that he knew, or that it was his business to know, anything of plaintiff's engagement with the dead engine. He moved in response to the signal. In making the coupling with the tender, the engine upon which plaintiff testified he was at work was moved some 5, 6, 7, or 8 inches. Plaintiff's cries, following immediately upon the impact of the live engine against the tender, brought several employees to the place where he was. The undisputed evidence of these employees was that they found plaintiff caught between the driving rod and the counterbalance of the main driving wheel of the engine. This counterbalance was a crescent-shaped body of iron or steel that from "nose" to nose" reached, approximately, three sevenths of the way around the wheel and extended out from the general surface of the outer side of the driver about four inches; and as the driver was caused to make a partial revolution forward by the impact of the live engine against the tender, transmitted through the tender to the dead engine, the counterbalance descended while the driving rod ascended, between them catching and breaking bones in the region of plaintiff's hips. The general position of plaintiff, as the witnesses found him, was facing away from the engine. It will be noticed that while the undisputed evidence showed that plaintiff was caught between the driving rod and the counterbalance of the third, or main, driving wheel, his testimony was that at the moment of his injury he was at work between the first and second driving wheels. That this was no inadvertence or mistake on the part of plaintiff is made clear by his testimony and by the testimony of witnesses for the defendant, upon which one of the pleas was predicated, to the effect that five or ten minutes before the accident they had seen plaintiff sitting and apparently asleep or drowsing on the driving rod with his back against the main driving wheel. Plaintiff did not deny that he was caught in the manner described by the witnesses for the defendant.

It has been our purpose to state the evidence as it may be supposed to bear upon the issue tendered by the first and third counts of the complaint charging negligence to the hostler, and not specially with reference to other issues in the cause, though they have been involved to some extent. On this evidence, though it be conceded that the tender was moved some small but unnecessary distance, it is very clear that the hostler, who had no knowledge or notice of the plaintiff's position, whatever that may have been, was not guilty of any breach of duty to plaintiff in making the coupling in obedience to Weatherly's signal. It was Weatherly's duty to plaintiff, if the latter was where he had a right to be in the performance of the work he was employed to do, to know the situation and govern the movements of the live engine accordingly; and however guilty he may have been, no culpable negligence with respect to plaintiff can be charged to the hostler who acted under his instructions as it was his duty to do.

It is not possible to conclude from any part of the evidence that any of the witnesses intended to say, or that in fact, the tender or the dead engine were moved any great distance by the impact of the live engine. The witnesses measure both these distances by inches. If plaintiff was engaged about the dead engine, as he said he was, and his body, while so engaged, was in a position that rendered any movement of the engine dangerous, and if Weatherly should have known the fact, it would have been a grave fault on his part to direct or allow any operation of the live engine that probably threatened plaintiff's safety by a movement of the dead engine, without giving plaintiff due warning. The brief for plaintiff argues that the evidence warranted a finding that the dead engine was moved from 12 to 20 feet. This, we presume, is based upon some rough estimates as to the position of the engine before and after the accident. Plaintiff, speaking of the position of the engine, testified:

"The front of the engine on which I was working was about 8 or 10 feet from the edge of wall of the roundhouse."

He said nothing about how far it was moved or its position afterwards. Witnesses for defendant, speaking of its position after the accident, testified that the nose of the engine was 10 or 15 feet from the wall of the roundhouse. Plainly, plaintiff and these witnesses were speaking of the same wall. This evidence does not sustain the contention that there was any change for-

[Louisville & N. R. R. Co. v. Gray.]

ward in the position of the engine. Nor have we been able, after a careful investigation of the record, to find any evidence that the dead engine was shoved forward anything like the distance it would have moved upon a complete revolution or any approximation of a complete revolution, of its driving wheels, as plaintiff seems to contend. The evidence on this subject came from defendant's witnesses who saw and took part in the operation, and their estimates of the movement of the dead engine varied from 4 to 8 inches. These witnesses also testified, and in this too they were uncontradicted, that from its position on the turntable, 75 feet from the inner or nearest wall of the roundhouse, the live engine moved up close to the tender, about 3 feet, the witnesses said, where it stopped, and then on Weatherly's signal moved again until it came into contact with the tender with force enough—some force was necessary—to cause the coupling apparatus to interlock automatically. The jury may have had reasons for discrediting these witnesses; but whether so or not, in the absence of other evidence affording a basis for some reasonable hypothesis of the hostler's negligence, there was no warrant for a finding that he was guilty of any initial negligence in moving his engine as he did in response to authoritative signal and without knowledge or notice of plaintiff's engagement in any manner with the dead engine.

(2) But plaintiff contends that there was room for a finding that the hostler was at fault in not stopping his engine more promptly upon hearing plaintiff's cries. In this connection it is noted that plaintiff's back was raked from shoulder blade down to sacrum; that is, down to the posterior bony wall of the pelvis, some bones in which were broken. The character of these injuries was entirely consistent with the fact that the dead engine moved only some inches. Without dispute, as we have already pointed out, plaintiff was caught between the forward descending nose of the counterbalance on the main driving wheel and the main driving rod, which, necessarily, was at the same moment ascending to meet the counterbalance, the statement of the witnesses, the photograph of the engine in question, shown in the record, our general acquaintance with the human anatomy, and our common knowledge of the construction and operation in a general way of locomotive engines, make it clear beyond cavil that plaintiff was injured by a very slight movement of the engine upon which he was at work. Not only so, but plaintiff's

evidence and the nature of his wounds conduce to the same conclusion. Plaintiff had no warning from any movement of the engine that he was about to be hurt. He testified that he did not know what struck him. There is, therefore, no reason for supposing that he cried out before at least some part of his injuries had been inflicted. It is not possible that thereafter the engine moved more than a few inches. If it had moved as much as a foot, plaintiff's hips would have been utterly crushed and no doubt his life ended upon the spot. To allow a verdict of subsequent negligence to be built up on such conditions would be to hold that the jury were justified in spinning a theory of negligence without regard to the teachings of common sense and experience. The truth is, no doubt, that the dead engine, being detached from the tender, moved only so far as the original impact of the tender sufficed to send it. In the absence of notice to the hostler that some one would probably be affected by the movement of the dead engine—and upon Weatherly's authoritative signal he was justified in assuming that no one would be—so slight a movement of the engine cannot in reason or justice be charged to him as negligence, initial or subsequent.

Convinced that the verdict in this case cannot be sustained by reference to the first and third counts of the complaint, we have attempted to discuss, in too much detail and at too great length perhaps, the elemental facts upon which the argument for that aspect of the case has been placed by counsel in their brief. Without further remark we leave the questions, whether plaintiff was at work upon the engine, and, if so, whether Weatherly was guilty of any negligence, to the finding of an impartial jury.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur. MCCLELLAN and GARDNER, JJ., dissent.