This is a father's suit for the wrongful death of his 12-year-old son, Gregory, which occurred on premises owned by defendants Billy J. Matthews and James E. Matthews, and which had been excavated by defendant Matthews Brothers Construction Company, Inc. The trial court granted the defendants' motion for summary judgment. The father appeals. We reverse and remand.
Our law provides that an occupier of land owes to trespassers only the duty not to willfully or wantonly injure them (Lovellv. Southern Ry. Co., 257 Ala. 561, 59 So.2d 807 (1952)), or put traps or pitfalls in their way (Gandy v. Copeland, 204 Ala. 366,86 So. 3 (1920)), to warn them of danger actually known by the occupier to exist on the premises after he has knowledge of their presence (Golson v. W.F. *Page 1122 Covington Mfg. Co., 205 Ala. 226, 87 So. 439 (1920)), and to use due care after discovering their peril (Birmingham Ice Cold Storage Co. v. Alley, 247 Ala. 503, 25 So.2d 37 (1945)). This duty is hereinafter referred to as the "conventional duty."
A trespasser, for purposes of civil liability, can be, among others, (1) a felon who enters the land for the express purpose of doing physical harm to the occupier or to the occupier's property, or (2) a curious or adventuresome child who enters the property intending no harm to anyone, or anything, but merely to gratify his childish curiosity and childish sense of play. The duty which we have imposed upon occupiers of land under the conventional theory may be too heavy when applied in the case of criminal trespassers. That question is not before us.
Our humanitarianism and our instinctive beliefs that adults have an obligation to protect and nurture the community's children have caused us at times to ameliorate the harshness of the rule regarding an occupier's conventional duty to a trespasser, when the trespasser is a child, and thereby to give primacy to child safety rather than to unrestricted property rights.
R. Clifford Fulford, Esq., in his scholarly and highly entertaining article, "The Tort Liability of Possessors of Property to Trespassing Children in Alabama," 11 Ala.L.Rev. 1 (1958), traces this State's rebellion from the harshness of the application of the occupier's conventional duty to trespassing children through the turntable cases, to the attractive nuisance cases, to the court-imposed limitations on the attractive nuisance cases (which virtually reinstated the conventional duty), and finally to a return to the straight negligence approach of the turntable cases. Mr. Fulford summarizes 34 cases decided by Alabama appellate courts between 1892 and 1958. His research reveals that the theories applied by those courts varied on a case to case basis among the following: conventional duty, attractive nuisance doctrine, and straight negligence. In reference to the indiscriminate choice of a theory or theories to fit a particular case, Mr. Fulford wrote: "In this respect, the Alabama appellate courts have been not unlike the young lady who, having accepted her first proposal, puts off the marriage to see whether there is a better prospect but is afraid to cancel the engagement because her first choice might, after all, be the best." 11 Ala.L.Rev.
at 9. In the 28 years since Mr. Fulford's article, we have made "the bride-to-be" a virtual Miss Haversham, for we still have no uniformity in our approach to a case such as the one now before us, which involves a trespassing child. In some cases we have applied the conventional duty. Alabama Great Southern R.Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964); Earnest v.Regent Pool, Inc., 288 Ala. 63, 257 So.2d 313 (1972). In other cases we have applied the attractive nuisance doctrine. City ofDothan v. Gulledge, 276 Ala. 433, 163 So.2d 217 (1964). In some cases we have acted as if both of those theories governed the occupier's duty to trespassing children. See, Mullins v.Pannell, 289 Ala. 252, 266 So.2d 862 (1972).
Chief Justice Heflin, writing for the Court, in Tolbert v.Gulsby, 333 So.2d 129, 135 (Ala. 1976) (where the owner of property left a loaded air rifle in his carport, which was frequented by children), "for clarity and certainty's sake now and in the future," adopted § 339, Restatement (Second) ofTorts (1965) (straight negligence), as controlling, regardless of whether the children are licensees or trespassers. However, we have continued to apply the conventional theory, see Fosterv. Alabama Power Co., 395 So.2d 27 (Ala. 1981), as well as the attractive nuisance doctrine, see Massey v. Wright,447 So.2d 169 (Ala. 1984). This has created confusion among the bench and bar.
The attractive nuisance doctrine is not applicable in cases where one seeks to impose liability upon an occupier of property for the death of or injury to a trespassing child. Likewise, the conventional duty is not applicable in such cases, except where physical harm to a trespassing child is caused by a natural condition upon the *Page 1123 
property. When physical harm to a trespassing child is caused by a natural condition upon the property, the conventional duty which an occupier owes to a trespasser is the only duty owed to the trespassing child. In all other cases, the duty which an occupier of property owes to a trespassing child is set forth in § 339, Restatement (Second) of Torts:
 "A possessor [occupier] of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." (Emphasis supplied.)
The standard of review applicable to this case is well established. See Rule 56 (c), Ala.R.Civ.P. In this case, summary judgment for the defendants would be proper if it clearly appears that there is no evidence as to an essential element of the plaintiff's cause of action. If there is any evidence tending to establish each element of the cause of action, then summary judgment would be inappropriate. In determining whether there is evidence to support each element — to raise a genuine question of material fact as to whether that element exists, Rule 56 (c) — this Court must review the record in a light most favorable to the plaintiff and resolve all reasonable doubts against the defendants. Harbison v.Albertville National Bank, 495 So.2d 1084 (Ala. 1986).
Reviewing the record in the light most favorable to the plaintiff, we find that the trial court had the following facts before it at the time it granted defendants' motion for summary judgment:
James and Billy Matthews bought a 17.32 acre tract of land between the east bank of the Coosa River and a large trailer park in November 1982. At that time, children who lived in the trailer park played on this land. The land had a farm fence around part of it; however, there were areas where there was no fence. The Matthewses used the land as a "borrow" pit, furnishing fill dirt to Matthews Brothers Construction Company, Inc. The defendants moved scrapers, dozers, a loader, a grader, and dump trucks onto the land and removed the fill dirt. The residents of the trailer park could hear the noise of the machinery from their trailers. While the fill dirt was being removed, the defendants were aware that children were on the property from time to time, and they had instructed their employees to warn the children to stay off the property. There is no evidence that the Matthewses' employees warned Gregory to stay off the property. They had not told the boy who was with Gregory at the time of his death to stay off the property. Several weeks before November 5, 1983, work on the property ceased and all of the machinery was removed. Steep, unsloped embankments, some as high as 20 feet, had been left by the removal of the dirt. These embankments could be seen from the trailer park. The area that had been excavated was not fenced; no "No Trespassing" signs or other warning signs were posted anywhere on the property.
On November 5, 1983, Gregory and a 13-year-old companion were on the property *Page 1124 
at a place where dirt had been removed; they were playing on a 5-foot-high dirt and rock ledge. There is no evidence in the record as to whether this ledge was left by excavation of dirt, or resulted from sloughing off of dirt from the adjacent embankment. This ledge was adjacent to a 15-foot-high, steep, unsloped embankment of dirt and rock which had been left by the excavation. The boys were digging a tunnel or cave into the embankment at the point where the 5-foot ledge adjoined the 15-foot embankment. Neither of the individual defendants was present at the time or knew that the boys were on the property. Dirt sloughed off the 15-foot-high embankment and/or the 3-foot tunnel or cave collapsed, burying Gregory. His companion was hit by falling dirt and rocks, which fractured several of his ribs. Gregory's body was later found under the dirt and rock. His skull had been crushed and he was dead. Rocks and dirt fell from the embankment during rescue operations.
There is evidence that Gregory's death was caused by the caving in or sloughing off of dirt from the artificial embankment created by the excavation. There is evidence that this happened at a place where the defendants knew that children were likely to trespass. There is evidence that the sloughing off or caving in of the embankment would involve an unreasonable risk of death or serious bodily harm to trespassing children. There is evidence from which the trier of fact could find that Gregory did not appreciate the risk of intermeddling with the embankment. There is evidence that the defendants failed to slope the embankment, to fence the property adequately, or to post warning signs. From this, the trier of fact could find that the cost of erecting an adequate fence (or of improving the existing farm fence), posting warning signs, or sloping the embankment before removing the equipment from the property would have been slight when compared with the risks to which the children were exposed.
This is a case for the trier of fact; therefore, the summary judgment should not have been granted.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.