The plaintiff Robert Ricketts appeals from a judgment based on a directed verdict for the defendant Norfolk Southern Railway Company, in a personal injury action. We reverse and remand.
Ricketts's action is based on injuries to his son, Eric Ricketts, who, at age 14, was severely injured in a fall from the Railroad's Brushy Creek trestle in Marion County, Alabama. The Brushy Creek trestle is 187 feet high, with a span of 1230 feet; it is the fifth highest trestle on the Norfolk Southern line. It is of "open deck" construction, meaning that a person standing on the trestle can look between the railroad ties to the ground below. There are no rails or banisters on the side of the trestle. In 1988, Norfolk Southern purchased the railroad line extending from Centralia, Illinois, to Haleyville, Alabama, which includes the Brushy Creek trestle. Norfolk Southern has never conducted railroad operations along that portion of the line from Hackleburg south to Haleyville; the Brushy Creek trestle is located along that portion. In December 1992, the railroad petitioned the Interstate Commerce Commission for permission to abandon the line between Red Bay and Haleyville, including the Brushy Creek trestle.
On the afternoon of September 14, 1993, Eric Ricketts and two companions, Sam McGough and Bubba Branch, drove their four-wheel all-terrain vehicles ("ATVs") out onto the trestle. Because the ATVs would not fit flat on the trestle deck, the boys rode them with the left wheels perched on top of one rail. At a point where he was 160 feet above the ground, Eric's ATV got stuck. As he attempted to get his ATV loose, he fell from the trestle, sustaining severe injuries. Eric was in a coma for four months following the accident. He is now spastic and can do nothing to help care for himself. Expensive shots are needed each three months to keep his spasticity under control. He requires 24-hour supervised care and will require such care for the rest of his life.
On July 12, 1994, Robert Ricketts, as Eric's father and next friend, sued Southern Railway Company, T.A. Heilig, Howard Frye, and fictitiously named defendants. Eric's mother, Shirley Ricketts, was later added as a plaintiff. The Rickettses' complaint alleged liability based on negligence, wantonness, the principle stated in Restatement (Second) of the Law ofTorts, § 339 (1965), and the attractive nuisance theory. Norfolk Southern Railway Company (as successor in interest to Southern Railway Company) and defendants Heilig and Frye answered, denying that § 339 of the Restatement has any application in this case and pleading the affirmative defenses of contributory negligence and assumption of the risk. The court entered a summary judgment for the defendants on the plaintiffs' attractive nuisance claim.
On April 10, 1995, the trial began. The plaintiffs' case was concluded on April 17, 1996; at that time the plaintiffs dismissed defendants Heilig and Frye, with prejudice. Norfolk Southern then moved for a directed verdict. On April 19, 1995, Judge Bobby R. Aderholt granted Norfolk Southern's motion for a directed verdict, in open court:
 "THE COURT: All right. After careful consideration of the criteria set out in [Lyle v. Bouler, 547 So.2d [506] 507 (Ala. 1989),] and the various elements of Section 339 of the Restatement of Torts, it is the Court's opinion that Section 339 is not applicable in this case and the court directs a verdict for the defendant [as to both] negligence and wantonness.
". . . .
 "A more definite statement of findings will be forthcoming in an order."
On June 9, 1995, the trial judge issued the following order, which failed to make a more definite statement of findings:
 "The Court having considered the motions of defendants for a directed verdict filed at the conclusion of the plaintiffs' case, . . . is of the opinion that such motions should be . . . granted. Accordingly, judgment is hereby entered for the defendants in this case."
The plaintiffs moved for a new trial, which was denied by the trial court. Robert Ricketts appealed. *Page 1103 
We must determine whether the trial court erred in directing a verdict on both the negligence and wantonness counts for the defendant Norfolk Southern Railway. We look first to the standard of review applicable in a case like this:
 "The standard of review applicable to a directed verdict or to a denial of a motion for a directed verdict is whether the non-moving party has presented substantial evidence in support of his position. If he has not, then a directed verdict is proper. Bailey v. Avera, 560 So.2d 1038, 1039
(Ala. 1990). A verdict is properly directed only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury to determine. Woodruff v. Johnson, 560 So.2d 1040 (Ala. 1990). Moreover, whether to direct a verdict is not a matter within the discretion of the trial court; on review no presumption of correctness attaches to such a ruling. McCord v. McCord, 575 So.2d 1056, 1057 (Ala. 1991); Barksdale v. St. Clair County Comm'n, 540 So.2d 1389 (Ala. 1989)."
K.S. v. Carr, 618 So.2d 707, 713 (Ala. 1993).
The trial judge stated in his order that he had considered the criteria set out in Lyle v. Bouler, 547 So.2d 506 (Ala. 1989). In Lyle v. Bouler the question was whether a landowner may owe a duty of care to a trespassing minor over the age of 14. The trial court entered a summary judgment for the defendant in Lyle v. Bouler on the grounds that no duty was owed to trespassing minors over the age of 14. In reversing that summary judgment, this Court stated:
 "For over 50 years, this Court continued to use the age of 14 as the demarcation line in determining whether a child would be liable for his actions. In 1976, however, this Court ruled that 'for clarity and certainty's sake now and in the future,' § 339 of the Restatement (Second) of Torts (1965) would be the law. Tolbert v. Gulsby, 333 So.2d 129, 135 (Ala. 1976).
 "Justice Houston, writing for the Court in Motes v. Matthews, 497 So.2d 1121, 1122 (Ala. 1986), reiterated our adoption of § 339, regardless of whether the child was a trespasser or a licensee. Because the Court has never reconciled § 339 with Central of Georgia [R.R. v. Robins, 209 Ala. 6, 95 So. 367 (1923)], the two standards continue to be applied, although they are clearly contradictory. In order to prevent further confusion, we reject the 14-year age limitation imposed in Central of Georgia and reassert our adherence to § 339, Restatement (Second) of Torts
(1965).
"Section 339 provides:
 " 'A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 " '(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 " '(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 " '(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 " '(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 " '(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.'
 "Subsection (c) and the comment to § 339 provide guidance in determining when a child assumes responsibility for his injuries. The comment states that few jurisdictions still use arbitrary age limits because 'in our present hazardous civilization some types of danger have become common, which an immature adolescent may reasonably not appreciate, although an adult may be expected to do so.'
 "Most jurisdictions have held that a child [below] the age of 14 may recover for injuries sustained when trespassing on the *Page 1104 
land of another. Others have extended recovery to 16 years and beyond. Skaggs v. Junis, 27 Ill. App.2d 251, 169 N.E.2d 684, 689 (1960) (16-year-old plaintiff allowed recovery); Hendricks v. Peabody Coal Co., 115 Ill. App.2d 35, 253 N.E.2d 56, 57
(1969) (16-year-old plaintiff allowed recovery); Boyer v. Guidicy Marble, Terrazzo Tile Co., 246 S.W.2d 742, 746-747 (Mo. 1952) (17-year-old plaintiff allowed recovery).
 "It is clear that § 339 recognized the irrationality of assigning arbitrary age limits to determine a time when a child must assume total responsibility for his actions.
 "By rejecting the age limitation imposed in Central of Georgia, this Court now embraces § 339 as the only authority for determining whether a child may recover. This is not to say that age should not be a factor at all. The comment to § 339 clearly states that recovery will be less likely as the age of the child increases. Age may be an important factor in determining liability, but it is one of many factors that must be examined.
 "Elements that merit examination are: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child. After these elements have been analyzed, the trial court must examine the landowner's conduct, in accordance with the remainder of § 339."
Lyle v. Bouler, 547 So.2d at 507-08.
Judge Aderholt stated that, having considered the criteria set out in Lyle v. Bouler and the various elements of § 339 of the Restatement, he had concluded that under the facts of this case there could be no liability under § 339. We therefore must determine whether Judge Aderholt erred in so holding, and in determining that we consider the factors enumerated in Lyle v.Bouler.
Eric's mother testified that Eric was an average 14-year-old boy who made average grades and who at the time of his injury had just begun the 9th grade. Eric's mother described him as "all boy" who "did what he had to do to get by." There is no evidence that Eric knew that anyone had ever been injured from being on the trestle. In fact, there was evidence that he knew that persons had ridden across the trestle with apparent impunity. There was testimony that Eric knew that an uncle of his had ridden a motorcycle across the trestle.
Under § 339, "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one that the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children." Norfolk Southern contends that it had no knowledge at the time of the accident that children were trespassing on the trestle. However, the testimony indicates that the Brushy Creek trestle has been a local attraction for years. A Boy Scout leader, Frank Herndon, testified that he had brought scouts from Aberdeen, Mississippi, to rappel from the trestle. John Thomas Adams, whose home is located within a mile of the trestle, testified that he knew of at least four ways to reach the trestle by vehicle, primarily by 4-wheel-drive vehicles. He himself had taken sightseers to it in his pickup truck. He has seen as many as 15 people on the trestle at one time. The chief of police of the Town of Bear Creek testified that in 1991 he had specifically informed the railroad's employees, including a railroad policeman, of the fact that men, women, and children were frequently on the trestle and suggested to them that it be barricaded. On July 4, 1993, approximately two months before Eric's fall, the crossties on the trestle were set afire by fireworks that were set off on the trestle. The fire was reported to Donald Benson, a track supervisor for Norfolk Southern, who that night attempted to put it out with water from his truck. As a result of the fire, 32 ties in a row on the trestle were burned out. Howard Frye, the railroad's bridge and building supervisor, made a written report of the damage made *Page 1105 
by the fire. In his testimony, he agreed that the trestle is dangerous. Thus, there was evidence from which a jury could conclude that the criteria of § 339(a) and (b) were met in this case.
We next look at § 339(c), which both sides suggest in their briefs is the crux of this case. In Hollis v. Norfolk SouthernRy., 667 So.2d 727 (Ala. 1995), this Court held that § 339(c) "makes a lack of knowledge of the risk and a lack of ability to appreciate that risk an element of a plaintiff's prima facie case." In affirming a summary judgment for the defendant railroad in Hollis, a case in which a 16-year-old was severely injured, this Court stated:
 "Landowners have no duty under § 339 to protect children from their own 'immature recklessness,' when the danger is known and appreciated by them. See cmt. m. Thus, a landowner is not subject to liability when a child knows of a danger and appreciates the risk involved, but chooses to go forward and to encounter the danger out of 'recklessness or bravado.' See cmt. m."
667 So.2d at 732. The evidence in Hollis was that the injured child, Dana Hollis, was a licensed automobile driver and had become a licensed motorcycle driver at age 14. He was injured when he fell off the edge of a railroad cut. His father testified that he had trusted his son's judgment and had allowed him latitude to make many of his own decisions. This Court concluded that the trial court properly entered the summary judgment for the railroad, because the evidence showed that Dana consciously recognized, understood, and appreciated the risk and the consequences of falling off the edge of the cut. This conclusion was based upon the testimony of both Dana and his father.
Eric cannot testify. However, Sam McGough, who was with Eric on the lead ATV, testified. Norfolk Southern cites a statement Sam made two days after the accident to a railway investigator who had been sent to McGough's home. At trial Sam McGough was questioned as follows:
 "Q. Well, back to this occasion in the tape at your house two days after the accident. Didn't you tell Mr. Wickwire that Eric had a helmet on and took it off before you got on the bridge, and Eric said, if he fell off the helmet would not help him anyway?
A. Yes, sir."
Norfolk Southern emphasizes this statement as proof that Eric Ricketts fully understood and appreciated the risk of going onto the trestle. As Dean Prosser said in his article,Trespassing Children, 47 Cal. L.Rev. 427 (1959), " 'appreciation' of the danger is what is required to bar recovery, rather than mere knowledge of the existence of the condition, or of some possible risk." Id. at 462. The question of a child's appreciation of danger is ordinarily one for the jury and not for the court. Patterson v. Palley Mfg. Co.,360 Pa. 259, 267, 61 A.2d 861, 865 (1948). As this Court has said:
 "In adopting § 339, this Court recognized the special duty owing to a class of plaintiffs, defined in § 339(c), whose natural proclivity for wonder and adventure often exceeds their sense of impending danger. See Motes v. Matthews, 497 So.2d 1121 (Ala. 1986). Whether a particular plaintiff falls within this class will ordinarily present a jury question. See Lyle v. Bouler, 547 So.2d 506
(Ala. 1989)."
Henderson v. Alabama Power Co., 627 So.2d 878, 881 (Ala. 1993). Thus, the question whether the criterion of § 339(c) was met was for the jury's determination.
Finally we consider § 339(d) — "the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved" — and § 339(e) — "the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
Norfolk Southern does not contend that it had placed any barricades or warning signs on the Brushy Creek trestle. As previously noted, several local residents testified concerning the number of visitors to the trestle. Mike Mauldin, who lives a mile from the trestle, testified that the trestle is a hangout for kids and there are two or three roads and several trails leading to it from county roads. In addition, Mauldin testified that he had seen dune buggies and motorcycles cross the trestle. He estimated that *Page 1106 
several times a month people stop at his home to ask for directions to the trestle. The Bear Creek police chief, in whose police jurisdiction the Brushy Creek trestle lies, testified not only that he had observed both adults and children on the trestle, but that in 1991 he had warned a group of Norfolk Southern employees, including a railroad policeman, that they had a problem with adults and children being on the trestle frequently.
The trial court directed a verdict both as to negligence and as to wantonness. In Henderson v. Alabama Power Co., supra, this Court explained that the duty set forth in § 339 may form the basis of a wantonness claim:
 "[T]he duty set forth in § 339 may also form the basis of a cause of action for wantonness — subject to a 'heightened knowledge' requirement. . . .
 "This 'heightened knowledge' requirement for wantonness has been defined as 'the conscious doing of some act or the omission of some duty [while] under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result.' Lewis v. Zell, 279 Ala. 33, 36, 181 So.2d 101, 104 (1965). Wantonness will be found where the evidence demonstrates 'that with reckless indifference to the consequences [a party] consciously and intentionally did some wrongful act or omitted some known duty which produced the result.' Id.
 "In the context of § 339, wantonness may be summarized as the defendant's conscious acts or omissions in the maintenance of an artificial condition on a place where the defendant knows children will likely trespass, accompanied by the awareness that they will thereby expose themselves to a high probability of injury. It need not be shown that the defendant specifically anticipated the trespass of the plaintiff, Tolbert [v. Gulsby], 333 So.2d [129] at 134 [(Ala. 1976)], but only that the defendant anticipated trespasses by members of the protected class to which the plaintiff belonged, and that such persons trespassing would thereby be exposed to a high risk of injury due to the defendant's acts or omissions. The defendant's knowledge, although the sine qua non of wantonness, 'may be made to appear like any other fact, by showing circumstances . . . from which the fact of knowledge is a legitimate inference.' Blount Brothers Constr. Co. v. Rose, 274 Ala. 429, 437, 149 So.2d 821, 830 (1962).*
627 So.2d at 881-82. (Emphasis original; some emphasis omitted.) The trial court erred in entering the summary judgment as to the wantonness count, because there was evidence from which a jury could legitimately infer heightened knowledge.
Norfolk Southern argues that § 339 does not apply, because it contends, Eric Ricketts was engaged in an adult activity at the time of his fall and is therefore held to an adult standard of care. The railroad cites Gunnells v. Dethrage, 366 So.2d 1104
(Ala. 1979), in which a minor fell asleep while operating an automobile on a public highway, struck a bridge abutment, and injured his minor passenger. This Court held the minor to the same standard as all other users of the highways. Id. The "adult activity" decisions have been used to hold minors liable for injuries sustained by others, as a result of the minor's adult activity. The rationale behind those decisions is that it would be unfair to the public to apply a double standard of care to drivers on public highways, one applicable to adults and another applicable to minors. The record does not reflect that Eric was engaged in an "adult activity" within the principle of these cases.
Norfolk Southern also contends that § 339 does not apply in cases involving falls, because, it says, all children recognize the dangers from falling. In McHugh v. Reading Co., 346 Pa. 266, 30 A.2d 122 (1943), and Arbogast v. Terminal R.R. Ass'n.,452 S.W.2d 81 (Mo. 1970), the risk of falling was held to be an open and obvious danger to the child, and therefore § 339(c) was held not applicable. In Lyle v. Bouler, supra, a 16-year-old boy, holding a valid driver's license, *Page 1107 
drove with a friend to a clay pit that had not been used commercially for some years. They climbed up the sides of the pit to see which of the two could climb the highest. During one climb, the two came to a ledge and sat on it to rest. Several minutes later, the ledge collapsed and the two fell 15 feet to the bottom. This Court reversed a summary judgment for the defendant landowner in Lyle v. Bouler, reasserting our adherence to § 339, Restatement (Second) of Torts (1965). This was an obvious recognition that the ultimate question was not whether the child appreciated the danger of falling, but rather was whether the child had a full knowledge of and appreciation of the risk involved.
For the reasons stated above, the judgment of the trial court based on the directed verdict for the defendant on the negligence and wantonness counts, is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., concurs specially.
MADDOX, and HOUSTON, JJ., dissent.
INGRAM, J., recused.
* "Additionally, the net inference derived from balancing the 'utility . . . of maintaining the condition and the burden of eliminating the danger,' § 339(d), may be an aggravating ormitigating factor, depending on the circumstances."