MURDOCK, Justice
(dissenting).
Respectfully, I must dissent. I cannot agree that this case was proper for resolution by summary judgment on the issue of the children’s appreciation of the risk presented. Regardless of which party has the burden of coming forward with evidence or the ultimate burden of proof as to elements of Restatement (Second) of Torts § 339(c), the fact of James’s and Raymond’s ages, 10 and 9, respectively, is at least substantial evidence creating a genuine issue as to a material fact, i.e., whether they appreciated the risk of intermeddling with a stopped train. Indeed, the children’s ages, standing alone, give rise to what our cases have referred to as a prima facie case of a child’s inability to appreciate that risk in the same manner as would an adult. Accordingly, our precedents also make it clear that it is the unusual case in which the issue whether a child was capable of appreciating, and did appreciate, a particular risk is not a question for the jury.

I. Substantial Evidence of Incapacity to Appreciate the Risk, Based on the Children’s Ages

The railroads’ position before the trial court and on appeal is that the record does not contain substantial evidence from which jurors could find that James and Raymond did not appreciate the danger of approaching and climbing up on the train. An issue thus presented is whether the fact that a child is only 9 or 10 years old can itself be substantial evidence indicating that the child did not appreciate the risk of climbing on a ladder on the side of a boxcar of a stopped train. In answering a question of this nature, neither this Court nor jurors are required to leave common sense and life experiences at the door of the courtroom.
It is fundamental that a jury is to weigh the evidence before it “in the light of common sense, common reason, and the common experience of men, in connection with all the facts and circumstances in the case.” Metropolitan Life Ins. Co. v. Shaw, 22 Ala.App. 54, 55, 112 So. 179, 180 (1927). “The jury, in the discharge of its duty, is called upon to exercise [its] common sense, observation, and every day experience” in assessing the facts and circumstances developed and in determining “such infer- *939 enees as should be accorded” those facts. Brown v. State, 31 Ala.App. 54, 58, 11 So.2d 874, 877 (1943). See also United Sec. Life Ins. Co. v. St. Clair, 41 Ala.App. 243, 251, 130 So.2d 213, 219 (1961) (“Surely the jury, by common sense and by common knowledge, must have known that Mr. St. Clair had suffered pain during this experience.”); Thomas v. State, 37 Ala.App. 179, 181, 66 So.2d 189, 190 (1953) (“The jury was privileged to apply its common sense and every-day experiences and observations .... ”); and Louisville & N.R.R. v. Gray, 199 Ala. 114, 120, 74 So. 228, 230 (1916) (holding that a jury should not assess the facts presented “without regard to the teachings of common sense and experience”). “It is presumed that jurors do not leave their common sense at the courthouse door.” Ex parte Rieber, 663 So.2d 999, 1006 (Ala.1995) (quoted with approval in Ex parte Walker, 972 So.2d 737, 747 (Ala.2007)).
Common sense and life experience tell us, without fear of contradiction, that, as to a given risk, there must be some point at which a child’s age, standing alone, constitutes evidence from which a jury reasonably could infer an incapacity to understand that risk. If not age 9 or 10, perhaps age 6? If not 6, what about age 4, or age 3? If this is so, then the logical underpinning of the railroads’ position as to the substantial-evidence issue is removed, and the only question remaining is — at what age?[9]
The reasonableness of a jury’s finding that a child cannot appreciate certain dangers, based solely on the fact that the child is only 9 or 10 years of age, is borne out by a review of decisions by this Court both before and since Lyle v. Bouler, 547 So.2d 506 (Ala.1989), discussed by the main opinion. As this Court noted in Lyle, “[f]or over 50 years, this Court continued to use the age of-14 as the demarcation line in determining whether a child would be liable for his actions.” 547 So.2d at 507. In the. pre-Lyle case of Central of Georgia R.R. v. Robins, 209 Ala. 6, 7, 95 So. 367, 368 (1923), a case involving a child who was injured while playing upon a railroad turntable, this Court quoted with approval 20 R.C.L. 87, § 77:
“ ‘The truth of the matter seems to be that the turntable doctrine furnishes justification for a recovery by children who have gotten old enough to go about unattended but are yet unaware of the perils embodied by machinery and other instrumentalities of an artificial nature— the period between the ages of five and ten.’ ”
(Emphasis added.) In the same opinion, the Court noted:
“The cases seem to fully sustain the statements of the text above quoted, and in practically every statement of the rule of liability it is grounded upon the duty owed to children offender years,’ whose imprudences are usually due to the play of childish instincts, unenlightened by experience, and unrestrained by reason. See note to Barnes v. Shreveport City R.R. Co., 49 Am. St. Rep. 417, 418. In his note to Westbrook v. Mobile, etc., R. Co. (Miss.) 14 Am. St. Rep. 595, Judge Freeman remarks that the rule of the ‘turntable cases’ has been applied by the courts in many of the states ‘to children from five to twelve years of age.’ ”
209 Ala. at 7-8, 95 So. at 368 (emphasis added).[10]
*940 Even if the children in this case had been over 14 years of age, which they were not, Lyle makes clear that their ages would still be important facts to be considered by the jury:
“By rejecting the age limitation imposed in Central of Georgia [R.R. v. Robins, 209 Ala. 6, 95 So. 367 (1923),[11]] this Court now embraces § 339 as the only authority for determining whether a child may recover. This is not to say that age should not be a factor at all. The comment to § 339 clearly states that recovery will be less likely as the age of the child increases. Age may be an important factor in determining liability, but it is one of many factors that must be examined.”
Lyle, 547 So.2d at 508 (emphasis added). The Court then proceeded to identify seven factors that merited examination, the age of the child being one of them. In addition, the age of a child obviously can be a fact from which a jury can draw inferences as to many of the other factors identified in Lyle, those factors being
“(1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child’s actual knowledge of the danger; (4) the child’s ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child.”
547 So.2d at 508. Thus, the respective ages of James and Raymond constituted substantial evidence that each of them was incapable of appreciating the risk at issue in this case in the same manner as an adult, thereby creating a genuine issue of material fact and making the summary judgment inappropriate. This is so despite the presence of countervailing evidence in the case of James.
Further, even if the record allowed us to conclude as a matter of law that James personally appreciated the risk he assumed in approaching the stopped train as he did and therefore that the railroads had no direct duty to him in this case, the “rescue doctrine” nonetheless would extend to James the duty the railroads owed Raymond as a result of Raymond’s lack of appreciation of the risks at issue. As to Raymond, there is little, if any, countervailing evidence.
Raymond’s age is a proven fact for purposes of this case. That fact is direct evidence of what Raymond himself did or did not appreciate in terms of the risks presented the children. It is not necessary that jurors be provided expert witness testimony or treatises explaining what nine-year-olds are and are not capable of appreciating. As noted, jurors are not required to check their common sense, life experience, and basic understanding of human development and human nature at the courthouse door.
II. Further Comments on the Significance of the Children’s Ages on Lyle and on § SS9 [12]
The issue in Lyle was merely “whether the landowner may owe a duty of care to a *941 trespassing minor over the age of 14.” 547 So.2d at 506-07 (emphasis added). Relying on Central of Georgia, supra, the trial court in Lyle had ruled that, as a matter of law, the landowner had no duty to a trespassing minor over the age of lk because of the principle that children “over 14 are ‘presumed to be capable of the exercise of judgment and discretion.’ ” Lyle, 547 So.2d at 507 (quoting Central of Georgia, 209 Ala. at 8, 95 So. at 368). See also Justice Maddox’s dissent in Lyle, 547 So.2d at 509 (criticizing the rationale employed by the majority in Lyle to reverse the trial court’s judgment, namely that “Tolbert [v. Gulsby, 333 So.2d 129 (Ala.1976),] had the effect of overruling the principle ... that a child over the age of 14 is ‘presumed to be capable of the exercise of judgment and discretion’ ”).
What Lyle did was to make clear that Alabama law, in fact, no longer presumed that children over 14 years of age are capable of exercising judgment and discretion. In place of that presumption, the Court held that the determination of whether a child over 14 years will be responsible for his or her own actions in the context of § 339(c) would depend upon the age of the child and other elements as articulated therein:
“In entering summary judgment, the Circuit Court of Mobile County held that no duty was owed minors over the age of lk- The circuit court ruled that this issue was settled in Central of Georgia R.R. v. Robins, 209 Ala. 6, 95 So. 367 (1923). In that case, this Court ruled that a child of ‘tender years’ could not be over lk and that those over lk are ‘presumed to be capable of the exercise of judgment and discretion. ’ Central of Georgia, 209 Ala. at 8, 95 So. 367.
“For over 50 years, this Court continued to use the age of 14 as the demarcation line in determining whether a child would be liable for his actions. In 1976, however, this Court ruled that ‘for clarity and certainty’s sake now and in the future,’ § 339 of the Restatement (Second) of Torts (1965) would be the law. Tolbert v. Gulsby, 333 So.2d 129, 135 (Ala.1976).
“Justice Houston, writing for the Court in Motes v. Matthews, 497 So.2d 1121, 1122 (Ala.1986), reiterated our adoption of § 339, regardless of whether the child was a trespasser or a licensee. Because the Court has never reconciled § 339 with Central of Georgia, the two standards continue to be applied, although they are clearly contradictory. In order to prevent further confusion, we reject the lk-year age limitation imposed in Central of Georgia and reassert our adherence to § 339, Restatement (Second) of Torts (1965).
[[Image here]]
“It is clear that § 339 recognized the irrationality of assigning arbitrary age limits to determine a time lohen a child must assume total responsibility for his actions.”
Lyle, 547 So.2d at 507-08 (emphasis added).
What Lyle did not do was eliminate— indeed, Lyle did not even address — the presumption in Alabama law that a child under 14 years of age, or a child of “tender years,” is incapable of exercising the same judgment and discretion as an adult. This Court has specifically explained, since *942 Lyle, that “we apply a different standard to children below the age of 14. A child' between the ages of 7 and 14 is prima facie incapable of contributory negligence. Superskate, Inc. v. Nolen, 641 So.2d 231, 236 (Ala.1994); Savage Indus., Inc. v. Duke, 598 So.2d 856, 858 (Ala.1992).” Aplin v. Tew, 839 So.2d 635, 639 (Ala.2002).
There is no difference between a child’s ability to appreciate risks for the purpose of being contributorily negligent and his ability to appreciate danger for the purpose of satisfying § 339(c). The very foundation upon which the law presumes that a child between the ages of 7 and 14 is not legally responsible for purposes of contributory negligence is the fact that such an age constitutes prima facie evidence that a child is not capable of appreciating certain dangers.
Section 339(c), by its terms, applies to children who “because of their youth,” i.e., their age, do not realize the risk involved in intermeddling with the artificial condition with which they are presented. Moreover, the synonymous nature of the issue whether a child is capable of contributory negligence and the issue whether a child can appreciate risk sufficiently to satisfy § 339(c) is self-evident. The law cannot embrace one rule in the former case and another in the latter without producing illogical and conflicting results.
In Tolbert v. Gulsby, 333 So.2d 129, 135 (Ala.1976), the Court noted “the similarity between Alabama cases using the straight negligence doctrine in relationship to trespassing children,” which obviously implicates the doctrine of contributory negligence, “and Section 339, Restatement of Torts 2d.” It was for “clarity and certainty’s sake ... regardless of whether the children are licensees or trespassers” that the Court adopted § 339 as the framework for analyzing landowner-liability cases involving children. 333 So.2d at 135.
Moreover, in Central of Georgia, the issue before the Court was not an issue of contributory negligence itself, but rather whether the landowner owed a duty to the injured child. The Court’s opinion made clear that it considered the age-based presumption for purposes of contributory negligence and the age-based presumption for purposes of landowner liability to be synonymous. After quoting the observation in an earlier case that no age had previously been determined to be, as a matter of law, an age at which a landowner no longer owed a duty to a trespassing minor, the Court stated:
“ ‘It must, however, in any case, be the age at which the child is capable of contributory negligence.’ ...
“We think this is the correct view of the matter, deducible from the nature of the duty prescribed, and from the necessities of the class for whose benefit the law has raised the duty. Certainly it is in accord with the general consensus of judicial opinion .... ”
209 Ala. at 8, 95 So. at 369 (some emphasis added).[13]
*943 Lyle makes it clear that § 339 replaced the doctrines of attractive nuisance and strict negligence as the legal framework, or theory, within which courts are to analyze a landowner’s liability to trespassing children. Regardless of which legal framework is used, however, at some point in the analysis it becomes necessary to assess the ability of the child to appreciate the danger at issue. (Under the framework provided by § 339, that point is described in § 339(c).) It is at that point that the use of the age-based presumption becomes applicable. Nothing in Lyle (which had as its focus whether the presumption against a child’s being able to appreciate a danger continued to apply to children over the age of lk) or in the cases decided since Lyle eliminates that presumption from our law.
In Superskate, Inc. v. Nolen, 641 So.2d 231 (Ala.1994), and other cases decided since Lyle, this Court has repeatedly intermingled its discussion of the prima facie inability of children between the ages of 7 and 14 to appreciate risks sufficiently to be contributorily negligent and the inability of children to appreciate risks for the purpose of satisfying the elements required for landowner liability. In Superskate, for example, the Court specifically applied the factors identified in Lyle to be determinative of whether a child appreciates risks sufficiently to establish a duty on the part of a landowner under § 339(c) as the factors to be used in determining whether a child between the ages of 7 and 14 is capable of contributory negligence:
“ ‘A child between the ages of 7 and 14 is prima facie deemed incapable of contributory negligence. King v. South, 352 So.2d 1346 (Ala.1977), citing Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). However, a child between the ages of 7 and 14 may be shown by evidence to be capable of contributory negligence by evidence that he possesses that discretion, intelligence, and sensitivity to danger that the ordinary 14-year-old possesses. Fletcher v. Hale, 548 So.2d 135 (Ala.1989).
To apply [contributory negligence] to a child, the Court must examine the following elements: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child’s actual knowledge of the danger; (4) the child’s ability to exercise discretion; (5) the educational level of the child; (6) the maturity of the child; and (7) the age of the child. See, Lyle v. Bouler, 547 So.2d 506 (Ala.1989).” ’ ”
641 So.2d at 236-37 (quoting Works v. Allstate Indem. Co., 594 So.2d 60, 63 (Ala.1992), quoting in turn Jones v. Power Cleaning Contractors, 551 So.2d 996, 999 (Ala.1989)).
In Aplin, supra, this Court again addressed the prima facie inability of a child between the ages of 7 and 14 to be capable of contributory negligence by citing Lyle and concluding that we should not hold such a child to the same standard to which we would hold an adult. 839 So.2d at 639. The Court made clear that a child’s “conscious appreciation of the danger” was the issue in regard to whether the child was “capable of contributory negligence.” Id.
Similarly, Superskate made clear that the application of the doctrine of assump *944 tion of the risk to a child is dependent upon a showing “that the child subjectively-appreciated the danger and voluntarily undertook it.” 641 So.2d at 237. In reference to a child between the ages of 7 and 14, the Court stated that “[w]here the defendants have not made such a showing, the trial court properly would not submit the question to the jury.” 641 So.2d at 237.
Thus, while it may be that the plaintiff has the burden of proving the elements of § 339, including § 339(c), the plaintiff is aided in that effort by the fact that our law has long recognized the inability of children between the ages of 7 and 14, as a general rule, to appreciate risks and dangers in the same manner as do adults. This inability to appreciate risk logically must apply both to the issue whether a child is incapable of appreciating a risk so that the law must in all fairness deem the child incapable of contributory negligence (or assumption of the risk) and thus leave responsibility for protecting the child from that risk solely on the party responsible for creating it, and to the corollary issue whether a child is incapable of appreciating a risk such that the law must in all fairness impose a duty on the landowner to protect the child from an artificially created condition on his or her land. In short, the age-based presumptions of incapacity found in the law of contributory negligence are the same as the presumptions of incapacity that inform the rules of landowner liability.

III. Application of the Foregoing Principles

Under the above-discussed principles, the summary judgment was inappropriate in this case. First, the evidence reflects that James was only 10 years of age. Under our caselaw, this fact alone creates a prima facie case that James was not capable of appreciating the risk presented by the stopped train. Even if this were not true, however, the fact would remain that James’s age is itself one of the seven Lyle factors. Furthermore, it is a fact from which the jury could make inferences as to many of the other six factors.
The main opinion recites countervailing evidence as to James’s appreciation of the risk, and that evidence certainly is sufficient to create a genuine issue of material fact. It does not, however, negate the evidentiary value of, and the presumption resulting from, James’s age — it merely creates a genuine issue of fact.
It also is worth emphasizing that at the time Raymond “intermeddled” with the railroad cars and James intervened to “rescue” Raymond, the railroad cars were not “rumbling” down the track, but had been stationary for some period. Further, the danger that James articulated in respect to the start-up of the train while Raymond remained on the boxcar ladder was simply that Raymond might be “taken off’ by the train if it started to move:
“I pulled Raymond down. I told him it was going to start up, because I didn’t want it to just take him off. I thought it was going to zoom off with him on the ladder and stuff like that, so I tried to grab him off. I had my foot on, not on the wheel, but had it on the rail thingy, had it on the rail. Like I tried to pull him off. It started up, like started moving. It was like boom, like lurched forward, I guess. It got my foot. I pulled him off, though.”
This testimony itself corroborates the view that, because of his age, James did not appreciate the danger of placing his foot on the rail during his effort to remove Raymond from the stationary train.
Indeed, given the foregoing testimony by James and the fact that the artificial condition presented was a stationary train, the opinion in Engel v. Chicago & North *945 Western Transp. Co., 186 Ill.App.3d 522, 542 N.E.2d 729, 134 Ill.Dec. 383 (1989), is noteworthy. Engel involved an injury to a 12-year-old boy resulting from what was known as “flipping,” or “[t]he practice of grabbing a short ride on slow-moving freight trains.” 186 Ill.App.3d at 525, 542 N.E.2d at 730-31, 134 Ill.Dec. at 384-85. The court found a sufficient basis to submit the case to the jury, explaining that
“[t]he main reason the ease cannot be determined as a matter of law is that the ‘obviousness’ of the danger is not such that no minds could reasonably differ. The policy determination that most children are presumed to know the risks of injury inherit in certain types of activities, such as playing with fire or playing in bodies of water[,] does not per se extend to the train flipping cases.”
186 Ill.App.3d at 530-31, 542 N.E.2d at 734, 134 Ill.Dec. at 388.
This case compares favorably to Ricketts v. Norfolk Southern Ry., 686 So.2d 1100 (Ala.1996). The only evidence in Ricketts tending to support the conclusion that the injured child should be treated differently from a similarly situated adult in regard to whether he appreciated the danger involved in his activity (driving an all-terrain vehicle across an elevated railroad trestle) was the fact of the child’s age — 14—and the fact that he made average grades for a 14-year-old. 686 So.2d at 1104. Countervailing evidence — i.e., evidence tending to prove that the child did appreciate the risk — was presented in Ricketts in the form of comments by the injured child that “if he fell off [the trestle], the helmet would not help him.” 686 So.2d at 1105. Despite this countervailing evidence of the child’s appreciation of the risk, this Court concluded that it could not say as a matter of law that the child appreciated the risk so as to bar recovery:
“Norfolk Southern emphasizes this statement as proof that Eric Ricketts fully understood and appreciated the risk of going onto the trestle. As Dean Prosser said in his article, Trespassing Children, 47 Cal. L.Rev. 427 (1959), ‘ “appreciation” of the danger is what is required to bar recovery, rather than mere knowledge of the existence of the condition, or of some possible risk.’ Id. at 462. The question of a child’s appreciation of danger is ordinarily one for the jury and not for the court. Patterson v. Palley Mfg. Co., 360 Pa. 259, 267, 61 A.2d 861, 865 (1948). As this Court has said:
“ ‘In adopting § 339, this Court recognized the special duty owing to a class of plaintiffs, defined in § 339(c), whose natural proclivity for wonder and adventure often exceeds their sense of impending danger. See Motes v. Matthews, 497 So.2d 1121 (Ala.1986). Whether a particular plaintiff falls within this class will ordinarily present a jury question. See Lyle v. Bouler, 547 So.2d 506 (Ala.1989).’
“Henderson v. Alabama Power Co., 627 So.2d 878, 881 (Ala.1993) [ (involving a claim on behalf of a 12-year-old boy) ]. Thus, the question whether the criterion of § 339(c) was met was for the jury’s determination.”
686 So.2d at 1105 (emphasis added).
The present case is a stronger candidate for a jury’s consideration than was Rick-etts. Here, James was only 10 years old, rather than 14. He testified that he acted to pull Raymond off the ladder by putting his foot “on the rail thingy,” and there is no evidence indicating that James specifically appreciated the risk that would be associated with stepping onto such a rail. It is true that he testified that he did appreciate the general danger of moving trains. This, however, simply constitutes countervailing evidence. Despite comparable countervailing evidence in Ricketts *946 (also in the forra of the injured child’s testimony indicating an appreciation of the risks), this Court held that the issue was not appropriate for a decision as a matter of law but was “for the jury’s determination.”
If the question of James’s appreciation of the danger is one for the jury, the question of Raymond’s appreciation of that danger is, a fortiori, also for the jury. Consequently, the question of the application of the “rescue doctrine,” which is explained in the main opinion, should have been put to the jury.
Unlike James, there is no countervailing evidence as to Raymond. All we have is the evidentiary value of the fact that Raymond was only 9 years of age, the inferences that can be drawn from that fact in relation to the other Lyle factors, and the presumption generated by that fact under our law, as well as the fact that Raymond did, in fact, proceed to engage in an activity that a more mature person would have seen as risky. That was exactly the situation in Motes v. Matthews, 497 So.2d 1121 (Ala.1986).
All we know from the reported opinion in Motes is that the injured child was 12 years old and that he did in fact engage in an activity that a more mature person would have seen as risky (digging tunnels in excavated mounds of dirt at a construction site). With nothing other than these facts to draw upon, this Court (1) quoted the elements of § 339; (2) noted that
“[i]f there is any evidence tending to establish each element of the cause of action, then summary judgment would be inappropriate. In determining whether there is evidence to support each element — to raise a genuine question of material fact as to whether that element exists, Rule 56(c) — this Court must review the record in a light most favorable to the plaintiff and resolve all reasonable doubts against the defendants.”
497 So.2d at 1123 (emphasis added); and then (3) stated that “there is evidence from which the trier of fact could find that [the child] did not appreciate the risk of in-termeddling with the embankment,” which collapsed on him, causing his death. 497 So.2d at 1124.
The railroads argue that the release of the air brakes and James’s admonition to Raymond to come down from the side of the boxcar constitute countervailing evidence as to Raymond’s appreciation of the risk. The appropriate response to that argument is twofold: (1) By the time those events occurred, Raymond already was in harm’s way, with little time to extricate himself from the danger in which he then found himself. (Indeed, Laster argues that one of several ways in which the railroads breached their duty of due care was in not sounding a warning with the horn, which would have given reasonable advance notice that the train was about to move.) (2) Even if the release of the air brakes and James’s admonition to Raymond constituted countervailing evidence, those facts still would be only that — countervailing evidence, i.e., evidence countervailing against the prima facie showing resulting from the child’s age and the inferences that can be drawn from it.

TV. Conclusion

To say that this case should not go to a jury based on the record before us is, in my view, inconsistent with our law and with the premise that juries are capable of appreciating, without any additional evidence, the significance of what it means to be only 9 or 10 years of age. I, therefore, respectfully dissent.
COBB, C.J., concurs.

. The viability of this question inevitably returns us to, and reinforces the viability of, the long-established presumptions in our law as to children of tender years. See Part II, infra.

. See also Birmingham & Atlantic Ry. v. Mattison, 166 Ala. 602, 609, 52 So. 49, 51 (1909) (noting that "there are ... ages, usually 7, after reaching which, it becomes a prima *940 facie presumption only, and may then be rebutted by evidence of unusual natural capacity, physical condition, training, habits of life, experience, surroundings, and the like” that the child is not capable of appreciating risks and danger in the same manner as an adult).

. The "age limitation” imposed in Central of Georgia was the age after which children would be presumed to be capable of appreciating risk and exercising judgment and discretion: "In [Central of Georgia] this Court ruled that a child of ‘tender years’ could not be over 14 and that those over 14 are ‘presumed. to be capable of the exercise of judgment and discretion.' " Lyle, 547 So.2d at 507 (emphasis added).

. Laster argues in his initial brief to this Court the significance of the fact that James and Raymond were children who did not fully appreciate the nature of the risk they con *941 fronted and on the effect of the application of § 339 of the Restatement. Although the main opinion asserts otherwise, see 13 So.3d at 930-31 n. 2, the principles discussed in Part II, including the prima facie effect of the children’s ages, are essential to a proper exposition of the law in this regard, to establishing the proper view of the evidence of record in this case, and to a proper understanding of the operation of § 339.

. The Court in Central of Georgia continued:
"In Cedar Creek [Store] Co. v. Ste[a]dham, [187 Ala. 622, 625, 65 So. 984, 985 (1914) ], speaking of children under 14 years of age, it was said:
" 'Such a child may not, however — and he is rebuttably presumed by the law not to — possess that maturity of discretion which dictates those precautions against the dangers of fire that are conclusively presumed by the law to belong to normal children who are 14 years of age.... If such a child, a child between 7 and 14 years of age and not possessing that discretion and maturity of judgment which the law conclusively presumes a normal child of 14 years of age to possess, is injured through the actionable negligence of another, such a child is entitled to *943 recover, although his own carelessness proximately contributed to his injury.'
"On the foregoing considerations and authorities, we hold that, as a matter of law, the plaintiff in this case was not within the class to whom defendant owed the duty invoked, and therefore is not entitled to recover as for a violation of that duty.”
209 Ala. at 8-9, 95 So. at 369.